■ In the Matter of HUNTINGTON TV CABLE CORPORATION, Appellant, v STATE OF NEW YORK COMMISSION ON CABLE TELEVISION et al., Respondents. — Appeal from a judgment of the Supreme Court at Special Term (Prior, Jr., J.), entered

March 12, 1982 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to (1) annul an order of the State of New York Commission on Cable Television, dated March 25, 1981; (2) annul a resolution of the Town Board of the Town of Huntington, dated January 6, 1981; and (3) enjoin construction and other activity of Cablevision Systems Huntington Corporation commenced pursuant to the resolution of the Town Board of the Town of Huntington and the order of the State of New York Commission on Cable Television. On December 29, 1967, respondent Town of Huntington (town) entered into a nonexclusive franchise agreement with petitioner Huntington TV Cable Corporation (Huntington TV) under the terms of which Huntington TV was permitted to operate a cable television system within the town. Under the agreement, Huntington TV was not required to furnish service to all areas of the town, but was to furnish service in the areas where utility lines were located on overhead poles. Thereafter, on December 22, 1976, toward the end that the service be competitive and that all of the citizens of the town be provided with service, the town entered into an amended franchise agreement with Cablevision Systems Huntington Corporation (Cablevision), the successor to Inter-County Television of Suffolk, Inc. This agreement amended and superseded the previously granted franchise to Inter-County Television of Suffolk, Inc., and was, after town board approval, submitted to the State of New York Commission on Cable Television (commission) as required by article 28 of the Executive Law and approved by the commission by order of March 3, 1978. A subsequent amendment, referred to as a "rider amendment", which was apparently intended to clarify or alter Cablevision's obligations under the agreement by providing new standards for newly designated geographic areas within the town, was disapproved by the commission on March 19, 1980, but with leave specifically granted for resubmission upon Cablevision's furnishing certain specified information including a technical description of the system and data concerning its financial ability, and the matter was remitted to the town board for possible further consideration. The town board thereafter caused to be published in *The Long Islander,* on July 10, 1980, a notice of a public hearing concerning the amendment to the franchise agreement to be held on July 29, 1980. The amendment was considered and discussed at this meeting and, at least, two other public meetings that followed. Petitioner did not take part in any of these meetings, but by letter requested an opportunity to appear before the board at a scheduled meeting on November 12, 1980. Though it was provided with the opportunity to discuss the franchise amendment at this meeting, petitioner declined to do so for the stated reason that not all of the board members were present. Similarly, at the next meeting on November 25, 1980, petitioner declined to discuss the issue because the town's supervisor was not present and requested an adjournment. Finally, on December 16, 1980, presentations were made and discussions conducted with petitioner and Cablevision participating, and, on January 6, 1981, after hearing and rejecting petitioner's objections and relying on representations regarding the construction schedule, the town board duly adopted a resolution approving the franchise amendment. On or about January 29, 1981, Cablevision's attorney forwarded a letter confirming the representations regarding the construction schedule to the town supervisor who, with the town attorney, approved its content as evidenced by their communications to the commission accompanying the town's application for commission approval. The commission approved the application by order of March 25, 1981. By order to show cause, petitioner commenced the instant proceeding on April 29, 1981, seeking a preliminary injunction and, *inter alia,* a judgment annulling the January 6, 1981 resolution of the town board and the

commission's order of March 25, 1981. While this proceeding was pending, the town board scheduled a public hearing for November 10, 1981, and, thereat, adopted a resolution ratifying the January 6, 1981 resolution and the representations as set forth in the letters of Cablevision's attorney, the supervisor and the town attorney. Special Term dismissed the petition by judgment entered March 12, 1982 and this appeal ensued. On appeal, petitioner argues (1) that the July 29, 1980 hearing was not preceded by reasonable notice; (2) that the town's resolution adopting the proposed amendment on January 6, 1981 was illegal and void for failure to comply with section 54-1 of the Code of the Town of Huntington; (3) that the commission's order of March 25, 1981 was null and void because the amendment was never the subject of a public hearing and was contrary to the January 6, 1981 resolution; and (4) that Special Term erred in applying the rational basis test. We will examine these assertions *seriatim*. Before doing so, however, inquiry as to the purpose of article 28 of the Executive Law as well as the powers delegated to the commission is in order, and a highly instructive commentary thereon is succinctly provided in the opinion of Chief Judge Cooke in *Matter of City of New York v State of New York Comm. on Cable Tel.* (47 NY2d 89, 92), wherein he states: "The Commission on Cable Television, created by the Legislature in 1972, is invested with broad authority to oversee the burgeoning cable television industry. Among its many powers, the agency is expressly authorized to 'promulgate, issue, amend and rescind such orders, rules and regulations as it may find necessary or appropriate' to carry out the purposes of the cable television statute (Executive Law, § 816, subd 1). In fact, no cable television franchise is effective unless it is confirmed by the commission, and '[n]o transfer, renewal or amendment of any franchise' may be accomplished without commission approval (Executive Law, §§ 821, 822). Approval of an amendment application may be made 'contingent upon compliance with standards, terms or conditions set by the commission' (Executive Law, § 822, subd 4). In addition to this enumerated authority, the agency 'shall have and may exercise all other powers necessary or appropriate to carry out the purposes' of the enabling act (Executive Law, § 816, subd 5)." We conclude that the July 29, 1980 public hearing was preceded by reasonable notice. The notice of that hearing was published in *The Long Islander,* a widely read newspaper, on July 10, 1980. While not in strict compliance with 9 NYCRR 592.13 and 594.8, it nevertheless adequately described the subject of the hearing and specifically named the amendment which was to be the subject of the hearing. In addition, the record reveals that the amendment was a subject which generated enormous interest among the townspeople and was widely covered by the media. The cases cited by petitioner in support of its claim that strict fulfillment of the notice requirements is absolutely necessary are either inapplicable or readily distinguishable. Those in the latter category involve departures from requirements far more serious than those at hand. To be applied here is the well-established time-honored rule that an agency's determination of its own rules is to be upheld unless it is irrational or unreasonable (*Matter of Howard v Wyman,* 28 NY2d 434). The administrative determination is to be accepted by the courts if it has warrant in the record and a reasonable basis in law (*Board v Hearst Pub.,* 322 US 111). Inasmuch as there is no indication that any of the interested parties were not fully aware of the issues or their rights to participate in the amendment review process, the purpose of the rules was fulfilled and, accordingly, the agency's determination is neither irrational nor unreasonable and has warrant in the record and a reasonable basis in law. Next we conclude that the 90-day limitation imposed by section 54-1 of the town code was not complied with in that the town board apparently never extended the time period at a regularly scheduled meeting

and failed to act within the 90-day limitation which, by provision in the section, is deemed a denial of the proposition. However, it is undisputed that in advance of the expiration of the 90-day period, petitioner sought and was granted the opportunity to appear and present its arguments, but appeared and sought adjournments which were granted. Yet, petitioner would now use the time limitation to defeat the town, which, acting in good faith and in fairness, provided it with an opportunity to appear and express its views. Such conduct offends the principles of fairness and cannot survive application of the doctrine of equitable estoppel which prohibits a person, upon principles of honesty, fair play and open dealing, from asserting rights, the enforcement of which, through his omissions or commissions, work fraud and injustice (*Rothschild v Title Guar. & Trust Co.*, 204 NY 458). Where the facts cry out for relief, the court should do what it can, and equitable estoppel, where appropriate, is then one of its most useful tools (*Sassower v Barone*, 85 AD2d 81, 88). Hence, petitioner is estopped by its own conduct and the January 6, 1981 resolution was not illegal and void as a result of the time limitations of section 54-1 of the Code of the Town of Huntington. As to petitioner's third contention, that the commission erred when it approved the proposed franchise amendment as explained by Cablevision's attorney's letter and responses from the town attorney and the supervisor, we find it to be without substance. In support of its position, it asserts that the subject letter does not merely clarify but actually contradicts and materially alters the amendment which had been approved by resolution of the town board, adopted on January 6, 1981, and that, since these alleged material changes were never authorized by the town board after a public hearing thereon preceded by reasonable notice, they could not be approved by the commission. Even conceding the necessity for a public hearing upon the changes allegedly effectuated by the above-mentioned correspondence, it must be noted that it is not disputed and the record contains documentary evidence that such a hearing was, in fact, conducted on November 10, 1981, pursuant to notice, after which the board approved by resolution the proposed franchise amendment and any changes therein suggested by the letter from Cablevision's attorney. Such being the case, any error by the commission in approving the proposed amendment before the mandatory public hearing was conducted thereon was meaningless and without prejudice to petitioner once the hearing of November 10, 1981 was held, and given these circumstances, it would obviously serve no useful purpose for this court to nullify the commission's approval of the proposed amendment based upon petitioner's allegation that prior to the commission's ruling the required hearing had not taken place. Finally, petitioner contends that, inasmuch as the petition raised issues as to the legal sufficiency of the proposed amendment, the January 6, 1981 resolution and the July 29, 1980 public hearing, Special Term's application of the "rational basis" test was erroneous. Review of Special Term's decision reveals that the issues of law were dismissed prior to its holding that there was a rational basis for the commission's decision. Special Term found that the commission's order followed "a long series of proceedings where petitioner and the public were fully aware of what was occurring with their rights and interests fully protected". Its conclusion that the commission's determination found support from the facts revealed in the record did not constitute error. Clearly, far-reaching control has been properly delegated to respondent commission and an administrative agency, as a creature of the Legislature, is clothed with those powers expressly conferred by its authorizing statute, as well as those required by necessary implication (see, e.g., *Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.*, 45 NY2d 471, 480; *Matter of Bates v Toia*, 45 NY2d 460, 464). Where, as here, an

agency has been endowed with broad power to regulate in the public interest, the Court of Appeals has not hesitated to uphold reasonable acts on its part designed to further the regulatory scheme (see, e.g., *Matter of Barie v Lavine,* 40 NY2d 565; *Matter of Sullivan County Harness Racing Assn. v Glasser,* 30 NY2d 269, 276). Similarly, the propriety of a commission's action often depends upon the nature of the subject matter and the breadth of legislatively conferred authority. Obviously, respondent commission has been granted extremely broad powers, and in viewing the totality of the circumstances, including the fact that all parties have had an awareness of the proceedings at all times and an opportunity to express their views, and it appearing that the acts of the commission were reasonable and in furtherance of the regulatory scheme and that no proper or necessary purpose would be served by remittal, the judgment should be affirmed. Judgment affirmed, with one bill of costs to respondents. Mahoney, P. J., Main, Yesawich, Jr., and Weiss, JJ., concur.

Mikoll, J., concurs in part and dissents in part in the following memorandum. Mikoll, J. (concurring in part and dissenting in part). I agree with the majority that the July 29, 1980 hearing regarding the franchise amendment was preceded by adequate notice and that the town's resolution adopting the proposed franchise amendment on January 6, 1981, was legal. However, I depart from the majority's approval of the commission's order dated March 25, 1981 and released April 13, 1981. The judgment of Special Term upholding such order should be modified and the matter remitted for further proceedings in accordance with this opinion. The January 6, 1981 resolution of the Town Board of Huntington required that Cablevision would not energize its above-ground facilities until completion of all underground work. The primary reason the town chose to grant a second franchise to Cablevision's predecessor was that service was not currently available to all residents of the town. The commission's order granting a certificate of confirmation and approving transfer of control adopted November 22, 1977 and released March 3, 1978 reflects this purpose in noting that the construction schedule set forth in the franchise was written in such a way as to require Cablevision's predecessor to make service available first to those areas where petitioner was not providing service. The letter of January 29, 1981 does not merely "clarify" the town board's January 6, 1981 resolution, but rather contradicts and materially alters it by allowing Cablevision to energize above-ground facilities before underground work is completed. Petitioner was not given notice or an opportunity to be heard on the amendments to the January 6 resolution contained in the January 29, 1981 letter. Any such attempted amendment of the franchise is illegal and void (Town Law, § 64, subd 7; Huntington Town Code, § 94-32; see Executive Law, § 821, subd 9; § 822, subd 6; *Orth-O-Vision v City of New York,* 101 Misc 2d 987; *Vizzi v Town of Islip,* 71 Misc 2d 483). I find no merit in the contention that the town board's purported reaffirmation of its January 6, 1981 resolution on November 10, 1981 imparted legality to the franchise as approved by the commission. A change beyond what was authorized by the town board on January 6, 1981 could be obtained only by a further amendment to the franchise agreement, after proper prior notice and further public hearing, as required by the rules and regulations of the commission, the Town Law and Huntington Code. The town failed to comply with necessary procedural requirements. The November 10 resolution simply attempted to tidy up what was affirmed at the January 6 proceedings. This certainly did not include the "clarifications" contained in the January 29, 1981 letter. Their approval by the commission was improper.