In the Matter of Bio-Tech Mills, Inc., Petitioner, v Henry G. Williams, as Commissioner of the Department of Environmental Conservation, Respondent.

Third Department, January 3, 1985

### APPEARANCES OF COUNSEL

*Oliver & Oliver* (*Lewis B. Oliver, Jr.,* of counsel), for petitioner.

*Robert Abrams, Attorney-General* (*Francis J. Keehan, Peter H. Schiff* and *James A. Sevinsky* of counsel), for respondent.

### OPINION OF THE COURT

MAIN, J. P.

Petitioner is the operator of a paper mill in Washington County which manufactures toilet tissue from printed waste paper. Petitioner was issued a State Pollutant Discharge Elimination System (SPDES) permit by the State Department of Environmental Conservation (DEC) in February, 1977. In February, 1982, Marvin Ferris, president of petitioner, applied for a renewal of the permit, seeking (1) to discharge approximately 565,700 gallons per day of treated wastewater from its mill into the Battenkill Creek, (2) to classify the mill as a "de-ink tissue" operation, and (3) to permit higher discharge limits than were allowed in the 1977 permit, which expired on March 1, 1982.

Under ECL 70-0119 and 6 NYCRR 752.5 and 755.2, DEC issued on May 5, 1982 the first of four combined notices of complete application and public hearing, stating DEC's tentative determination to deny petitioner's application for permit renewal and noticing a hearing to be held upon the application

on June 10, 1982. Petitioner failed to publish the hearing notice as required by 6 NYCRR 753.1 (a) and (c), and DEC issued two more combined notices on May 12, 1982 and May 18, 1982. Petitioner again failed to publish the notices. Upon petitioner's request for a decision, DEC informed petitioner that a tentative determination contained in the notices of May 5, May 12 and May 18 had been made to deny the application. Thereafter, a combined notice of complete application and public hearing was issued on September 30, 1982 scheduling a public hearing to be held on November 8, 1982.

The November 8, 1982 hearing was a legislative hearing to take unsworn position statements and a preadjudicatory issues conference for the purpose of narrowing or resolving issues concerning the permit application pursuant to 6 NYCRR 624.6. On November 15, 1982, the administrative law judge (ALJ) issued his rulings concerning intervenors and stated that the best usage of the Battenkill Creek would be an issue. The ALJ also requested that a technical conference be held between the parties to explore technical data relative to petitioner's application.

On appeal of the rulings made at the issues hearing, respondent held on November 23, 1982 that the best usage of the Battenkill Creek would not be determined in the adjudicatory proceeding but that the "value" of the creek to fishermen in the area of petitioner's discharge would be relevant.

The ALJ bifurcated the adjudicatory proceedings. Phase one would determine if petitioner was entitled to a renewal based upon past noncompliance, including petitioner's ability to meet permit limits, and technologies to be used by petitioner in support of its renewal. Phase two would consider the issues of appropriate biological oxygen demand (BOD) limits at the mill and the Battenkill's capacity to assimilate a higher BOD limit. The ALJ took official notice, *inter alia,* of respondent's decision of November 5, 1982 to reclassify the Battenkill to a trout-spawning stream. The ALJ made 107 findings of fact in his report on phase one of the adjudicatory hearing. The ALJ concluded that evidence of petitioner's persistent violations outweighed any reassurances from petitioner that a new treatment system would be operated within the confines of a renewed SPDES permit. The ALJ particularly noted petitioner's failure to meet specific terms of the 1977 permit regarding BOD limitations and turbidity, increase in paper production without DEC approval, failure to use a process required by DEC to reduce BOD discharges, and unauthorized discharge of untreated effluent into the Battenkill.

Respondent adopted the ALJ's report and denied permit renewal. Petitioner then commenced this CPLR article 78 proceeding to annul respondent's determination. The matter was transferred to this court for resolution.

Petitioner first argues that it was denied due process of law in that DEC failed to provide sufficient notice of the issues to be considered at the adjudicatory hearing and in the ultimate decision. More specifically, petitioner contends that DEC failed to give it notice that (1) the acts of petitioner prior to the issuance of the 1977 SPDES permit would be considered, (2) the character of Marvin Ferris, petitioner's owner, would be a major issue at the hearing, and (3) the status of the Battenkill as a trout-spawning stream would be considered.[1]

As to the first contention, we note that following the issues conference (6 NYCRR 624.6 [a]), the ALJ consolidated the intervenors and clearly limited their participation and standing to the pursuit of the single issue of the noncompliance of petitioner prior to 1977 when the present permit was issued. Hence, petitioner, who participated in the conference, was fully aware of the fact that its conduct prior to 1977 would be an issue. Petitioner's second due process argument is likewise without merit. Perusal of this voluminous record reveals less than one-half dozen references to Ferris, and those few refer to his performance as petitioner's president and fall far short of making his character an issue. Since Ferris' character was not an issue, there was obviously no need for notice to that effect.

We also find the third prong of petitioner's due process argument to be unpersuasive. The notice of complete application and public hearing expressly provided: "[T]he Department has tentatively determined to deny BIO-TECH's renewal of its SPDES permit * * * based upon BIO-TECH's failure to substantially comply with all the terms, conditions, requirements, and schedules of compliance of its current SPDES effluent limitations ($BOD_5$, Total Suspended Solids and Turbidity), *water quality standards and related court orders*" (emphasis added).

Moreover, the ALJ, in his ruling following the issues conference, made it crystal clear that the best usage of the Battenkill would be one of the issues to be addressed. Best usage and classification are inseparable and go hand in hand. Thus, while perhaps not advised in precise terms that the status of the Battenkill would be in issue, petitioner was fully aware that effluent

---

1. Prior to reclassification on November 5, 1982 as a trout-spawning stream, the Battenkill was designated as a trout stream.

limitations, suspended solids, turbidity and water quality standards, and best use of the stream would be in issue. Indeed, consideration was given not only to the effect petitioner's activities have on trout, but also to the effect said activities have on other aquatic life; petitioner makes no claim that such consideration was improper. Accordingly, in our view, petitioner was fully apprised of the claims of DEC and of the evidence to be considered, and no essential element of a fair trial was dispensed with (see *Matter of Hecht v Monaghan,* 307 NY 461).

Furthermore, the reclassification did not result in the imposition of new standards to the detriment of this petitioner and was, in fact, irrelevant to this proceeding. Reissue was denied not because of any standards imposed by reclassification, but because of petitioner's flagrant and recurring breaches of the standards called for in its present permit and its inability or unwillingness to even substantially comply with the environmental laws. Petitioner was accorded due process, which " 'unlike some legal rules, is not a technical conception with fixed content unrelated to time, place and circumstances' " (*Cafeteria Workers v McElroy,* 367 US 886, 895, quoting *Joint Anti-Fascist Comm. v McGrath,* 341 US 123, 162 [Frankfurter, J., concurring]) and "is flexible and calls for such procedural protections as the particular situation demands" (*Morrissey v Brewer,* 408 US 471, 481). In our view, the procedural protection called for in this particular situation, in view of the circumstances prevailing, was amply provided.

Petitioner next contends that it was denied any meaningful opportunity to be heard by the bifurcation process because it was thereby unable to present evidence that the Battenkill could receive higher BOD loads and that the discharge limitations of the existing SPDES permit had been unreasonable. Inasmuch as 6 NYCRR 755.2, which regulates reissuance of SPDES permits, provides that DEC may take steps to bring a permittee into compliance with an existing permit, the two-phase proceeding was permissible and appropriate. Moreover, the record reveals that there was agreement regarding this procedure between the ALJ and the attorneys for petitioner, respondent and the intervenors.

Petitioner's contention that ECL 70-0109 and 6 NYCRR 621.9 (b) and (c) require the issuance of a SPDES permit to petitioner is rejected. They provide that if DEC fails to mail a decision on a permit application within the time period specified under that section and rule, the permit applicant may duly notify DEC of such failure. If, within five working days after DEC receives the

notice, it fails to mail a decision, the application shall then be deemed approved and the permit granted.

■ Petitioner filed such a notice. However, in making its argument on this point petitioner overlooks ECL 70-0117 (subd 3), which provides that the time within which DEC shall make its determination of whether the application is complete shall be extended by 45 calendar days where there is a requirement pursuant to Federal law for a tentative determination or draft permit to be prepared prior to public notice or hearing. In the instant case, there was a tentative determination pursuant to Federal law and the 45-day extension was from March 3, 1982 to April 17, 1982, the date on which the application was deemed "complete". DEC then did not have to render a decision on the permit until 45 days after April 17, or June 1, 1982 (6 NYCRR 621.9 [a] [1]).[2] Since petitioner's letter of May 25, 1982 requesting a decision was premature, ECL 70-0109 and 6 NYCRR 621.9 (b) and (c) were not operable and no permit was required to be issued.

■ Lastly, we reject petitioner's final argument that the decision is unsupported by substantial evidence. The task of weighing the evidence and making a decision rests solely upon the administrative agency (*Matter of Collins v Codd,* 38 NY2d 269, 271). Where, as here, its determination is completely rational on the record and reasonably based, it cannot be set aside (*Matter of Pell v Board of Educ.,* 34 NY2d 222, 231).

MIKOLL, J. (concurring in part and dissenting in part). ECL 17-0805 provides for notice to applicants and interested parties of a hearing to be held on a SPDES application and of the issues to be adjudicated. DEC regulations promulgated pursuant to ECL 17-0805 provide that a hearing notice contain a concise statement of the issues raised by the party requesting the hearing (6 NYCRR 753.7 [b] [6]). Further, 6 NYCRR 624.6 (a) provides for an issues conference in advance of the public hearing, one purpose being to define and limit the scope of subjects for the adjudicatory hearing. Following the issues conference, the ALJ is to determine and advise the parties of the issues to which the evidence will be limited in the adjudicatory hearing (6 NYCRR 624.6 [c]).

In the combined notice of complete application and public hearing issued on September 30, 1982, DEC made no mention of the Battenkill's status as a trout-spawning stream because the

---

**2.** Inasmuch as the parties do not dispute this point, we assume, *arguendo,* that the application was for a minor project and, thus, the 45-day period is applicable.

creek was not reclassified as a trout-spawning stream until November 5, 1982, three days before the issues conference. In deciding to reclassify the stream, respondent held that the reclassification would have no impact on petitioner's existing permitted discharge. In his rulings following the issues conference, the ALJ never mentioned that the reclassification of the Battenkill would be an issue at the adjudicatory hearing, although he did decide that the best usage of the Battenkill would be an issue. Respondent, however, in an interim decision issued November 23, 1982, ruled that the best usage of the affected stretch of the Battenkill would not be determined in the adjudicatory proceeding, although he termed the importance of the Battenkill to fishermen in the area a relevant issue.

Nevertheless, the reclassification of the Battenkill as a trout-spawning stream was a significant issue at the permit renewal hearing as reflected in the ALJ's finding of facts and in respondent's decision to deny the renewal. Respondent made particular mention that "the segment of the Battenkill extending by [petitioner's mill] is classified as a trout-spawning stream which heightens the significance, as well as the notoriety and popularity, of this resource. The importance of protecting this resource is paramount". Thus, it is clear that petitioner was not given adequate notice and its due process rights were thereby violated. However, I concur with the majority and find no other due process violations.

I concur as well that petitioner's contention that ECL 70-0109 and 6 NYCRR 621.9 (b) and (c) require the issuance of a SPDES permit to petitioner should be rejected for the reasons articulated by the majority.

The determination should, in my view, be annulled and the matter remitted to respondent for further proceedings.

WEISS, YESAWICH, JR., and HARVEY, JJ., concur with MAIN, J. P.; MIKOLL, J., concurs in part and dissents in part in an opinion.

Determination confirmed, and petition dismissed, without costs.