In the Matter of MOBIL INTERNATIONAL FINANCE CORPORATION, Petitioner, v NEW YORK STATE TAX COMMISSION, Respondent. (And Two Other Related Proceedings.)

Third Department, May 8, 1986

## APPEARANCES OF COUNSEL

*Sullivan & Cromwell (M. Bernard Aidinoff, Randall K. C. Kau* and *David H. Jeffries* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Wayne L. Benjamin* and *Nancy A. Spiegel* of counsel), for respondent.

## OPINION OF THE COURT

WEISS, J.

Petitioners, Mobil International Finance Corporation (MIFC), Mobil Oil Corporation (Mobil Oil) and Mobil Petroleum Company, Inc. (Mobil Petroleum), seek review of a determination by respondent which sustained the assessment of deficiencies in corporate franchise taxes against each petitioner. MIFC was incorporated in Delaware in 1968 to obtain funds from foreign sources and to use those funds to assist in meeting the financial requirements of Mobil Oil and its subsidiaries and affiliates which operate exclusively in countries outside the United States. MIFC was a wholly owned subsidiary of Mobil Petroleum until 1977, when Mobil Oil acquired all of the shares of MIFC stock and held this interest until the end of that year.

At issue are loan instruments called "evidences of indebtedness" (mainly promissory notes) issued by Mobil Oil's foreign subsidiaries and affiliates to MIFC, Mobil Oil or Mobil Petroleum. In some instances, the evidences of indebtedness were sold and transferred to MIFC; in other instances, they were retained by either Mobil Oil or Mobil Petroleum. On its 1975, 1976, 1977 and 1978 New York State corporate franchise tax returns, MIFC classified all the evidences of indebtedness as "investment capital" *(see,* Tax Law § 208 [5]) and reported the interest earned therefrom as investment income. For the years 1976 and 1977, Mobil Petroleum did the same, as did Mobil Oil for the year 1977. The Corporation Tax Bureau of the Department of Taxation and Finance conducted an audit and, on February 20, 1981, issued a franchise tax deficiency notice to MIFC for 1975, 1976, 1977 and for the period of January 1, 1978 through February 28, 1978. Deficiency notices were also issued against Mobil Petroleum for 1976 and 1977

and against Mobil Oil for 1977. These deficiencies were the result of changes made by the auditors in the classification of the evidences of indebtedness from "investment capital" to "business capital", the income from which thus became business income (see, Tax Law § 208 [7]). The business income was subjected to a franchise tax based upon MIFC's New York allocation percentages, rather than the New York allocation percentages of the foreign debtor corporations, resulting in an increase in MIFC's taxable income in New York. The taxable income of Mobil Oil and Mobil Petroleum was similarly increased for the years each owned certain of the evidences of indebtedness.

Following a consolidated formal hearing, the deficiency assessments were sustained by respondent, giving rise to separate CPLR article 78 proceedings commenced by each petitioner and transferred to this court.

The issue presented is whether respondent could rationally classify the evidences of indebtedness as "business capital" within the meaning of Tax Law § 208 (7), rather than "investment capital" under Tax Law § 208 (5). Tax Law § 208 (5), insofar as pertinent, defines "investment capital" as "investments in stocks, bonds and other securities, corporate and governmental, not held for sale to customers in the regular course of business, exclusive of subsidiary capital and stock issued by the taxpayer". Tax Law § 208 (6) defines "investment income" as the income from investment capital less allowable deductions. Tax Law § 208 (7) defines "business capital" as "all assets, other than subsidiary capital, investment capital and stock issued by the taxpayer". Tax Law § 208 (8) defines "business income" as "entire net income minus investment income".

In order to classify the income received on its evidences of indebtedness as investment income, MIFC was required to prove that such income was derived from investment capital as defined above (see, Tax Law § 208 [5]). Since it is clear that the evidences of indebtedness held by MIFC were neither stocks nor bonds of the foreign subsidiaries and affiliates of Mobil Oil, the issue distills to whether these evidences of indebtedness constitute "other securities" as included in the definition of investment capital (see, Tax Law § 208 [5]). While the statute does not define "other securities", the applicable regulations do. 20 NYCRR former 3.31 (c), in effect prior to August 31, 1976, and 20 NYCRR 3-4.2 (c), in effect thereafter, both define the term as including: "securities issued by gov-

ernmental bodies and securities issued by corporations of a like nature as stocks and bonds, which are customarily sold in the open market or on a recognized exchange, designed as a means of investment, and issued for the purpose of financing corporate enterprises and providing a distribution of rights in, or obligations of, such enterprises." To support the contention that the evidences of indebtedness constituted "other securities" within the meaning of this regulation, petitioners noted that each obligor was a corporation and the funds were used to finance corporate enterprises, and they offered expert testimony that certain of the instruments were securities of a type sold in the private placement market. Petitioners' expert explained that this type of security is not required to be registered with the Securities and Exchange Commission, and is usually sold to insurance companies and other sophisticated institutions. Petitioners further claimed that the remaining evidences of indebtedness bore the "essential characteristics of bonds" (see, 20 NYCRR former 3.31 [c]; 3-4.2 [c]).

Respondent essentially ruled that, while certain of the evidences of indebtedness could have been sold in the open market, they were not sold in that manner, and that others did not possess the characteristics of securities. In sum, respondent determined that petitioners' proof was simply insufficient to establish that the evidences of indebtedness constituted securities, citing Matter of Avon Prods. v State Tax Commn. (90 AD2d 393).

Generally, in reviewing administrative determinations, the construction given statutes and regulations by an agency responsible for their administration will, if not irrational or unreasonable, be upheld (Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, 57 NY2d 588, 597; Matter of Johnson v Joy, 48 NY2d 689, 691; see, McKinney's Cons Laws of NY, Book 1, Statutes § 129). On the other hand, where "the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight" (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459; see, Matter of Robak v Regan, 101 AD2d 608, 609). Since the question of whether the evidences of indebtedness were "other securities" is one of specific application of a broad statutory term which respondent must determine initially, the function of a reviewing court is limited (see, Matter of American Tel. & Tel. Co. v

*State Tax Commn.,* 61 NY2d 393, 400). The task of evaluating the evidence and making a decision rests solely upon the administrative agency *(Matter of Collins v Codd,* 38 NY2d 269, 271; *Matter of Bio-Tech Mills v Williams,* 105 AD2d 301, 306, *affd* 65 NY2d 855), and, if there are any facts or reasonable inferences from the facts to support the determination, it must be confirmed *(see, Matter of Koner v Procaccino,* 39 NY2d 258, 264; *Matter of Park Swift Parking Corp. v New York State Tax Commn.,* 92 AD2d 970, 971, *lv denied* 59 NY2d 604). In the final analysis, the test for judicial review is not whether the court would have made a different determination if it were sitting as respondent, but rather, whether respondent's view rests on an adequate and rational basis and cannot be viewed as arbitrary and capricious *(see, Matter of Liberman v Gallman,* 41 NY2d 774, 777).

In *Matter of Howard Johnson Co. v State Tax Commn.* (105 AD2d 948, *revd on other grounds* 65 NY2d 726), this court concluded that the term "other securities" in Tax Law § 208 (5) is "patently ambiguous" *(supra,* at p 949). We further opted to defer to the agency's construction of the phrase, as set forth in the interpreting regulation, and limited our review accordingly. The same standard of review pertains here, and our inquiry is simply whether respondent's characterization of the evidences of indebtedness as "business capital" is rational and supported by the record *(see, supra).* In making this determination, we "look to the function of these instruments, to search for substance over form with emphasis on economic reality" *(Matter of Avon Prods. v State Tax Commn.,* 90 AD2d 393, 395, *supra).* In the final analysis, the taxpayer has the burden of overcoming the tax assessment *(see, Matter of Liberman v Gallman,* 41 NY2d 774, 777, *supra).*

These principles in mind, our review shows that respondent analyzed the evidences of indebtedness in two groups. In the first group, petitioners' own witness testified that the promissory note of Mobil Oil Holdings, S.A., issued to MIFC, was neither a medium of investment nor could it be sold in the private placement market. The note of Mobil Oil Hong Kong Ltd., issued to Mobil Petroleum, is not in the record and the expert did not discuss it. The notes of Nichimo Sekiyu Seisei, K.K., initially purchased by Mobil Petroleum, bore no interest and in the opinion of the expert would not be likely to sell on the private placement market. In addition, MIFC classified the evidences of indebtedness from various Japanese companies as "long-term advances-non-current" and the note of Mobil Oil

Holdings, S.A. as "intercompany notes receivable". Based on this evidence, the conclusion that this group of evidences of indebtedness were not securities was clearly rational and supported in the record (see, Matter of Huntington TV Cable Corp. v State of New York Commn. on Cable Tel., 94 AD2d 816, 818, affd 61 NY2d 926).

The second group of evidences of indebtedness were described by petitioners' expert witness as being of a type of instrument which could have been but was never sold in the private placement market. However, respondent determined that they were generated not for purposes of sale in any market, but rather to provide the obligors with funds to be used for general business purposes, such as capital expenditures or working capital. This conclusion is consistent with MIFC's stated purpose of providing financial assistance to the affiliates and subsidiaries of Mobil Oil. Since MIFC also classified these evidences of indebtedness as "intercompany notes receivable" in its own records, and none of them were ever held by a nonaffiliate, it cannot be said that respondent's determination that the proof fell far short of that required by this court in Matter of Avon Prods. v State Tax Commn. (supra) was irrational, unreasonable or unsupported in the record (see, Matter of Huntington TV Cable Corp. v State of New York Commn. on Cable Tel., supra). In sum, the proof before respondent adequately supports the finding that the evidences of indebtedness were intercompany loans to affiliates in the regular course of their businesses rather than instruments issued for sale on securities exchanges or markets commonly dealing in investments.*

Nor are we persuaded by petitioner's further contention that Federal law supports the classification of the evidences of indebtedness as securities. Even under Federal statutes, each case is decided sui generis, and the determinative factor is not the form of the instrument but the nature of the transaction (see, Banco Nacional De Costa Rica v Bremar Holdings Corp., 492 F Supp 364, 368).

Since the proof in the record supports respondent's conclusion that the evidences of indebtedness were acquired and

---

* An advisory opinion was obtained by petitioners from the Department of Taxation and Finance in September 1980 which classified the evidences of indebtedness as business capital and stated that they were not "other securities". This advisory opinion, binding only upon respondent, was based upon acquiesced facts that the evidences of indebtedness were not secured or sold upon any securities exchange or open market and were not negotiable.

held by petitioners in the ordinary course of business, and therefore, constituted "business capital" *(see,* Tax Law § 208 [7]), the determination should be confirmed *(see, Matter of Liberman v Gallman,* 41 NY2d 774, 777, *supra).*

MAIN, J. P., MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur.

Determination confirmed, and petitions dismissed, with costs.