In the Matter of CENTRAL NY COACH LINES, INC., Respondent, v JAMES L. LAROCCA, as Commissioner of Department of Transportation of the State of New York, et al., Appellants, and COUNTY OF ONONDAGA et al., Respondents.

Third Department, November 13, 1986

**APPEARANCES OF COUNSEL**

*Robert Abrams, Attorney-General (Calvin M. Berger* and *William J. Kogan* of counsel), for James L. Larocca, appellant.

*Hesson, Ford, Sherwood & Whalen (Donald P. Ford, Jr.,* of counsel), for Greyhound Lines, Inc., appellant.

*O'Connell & Aronowitz, P. C. (Brendan C. O'Shea* of counsel), for Central NY Coach Lines, Inc., respondent.

### OPINION OF THE COURT

MAHONEY, P. J.

Central NY Coach Lines, Inc. (Central), a commuter bus carrier, has been providing local and express service along the Syracuse-Utica-Little Falls line since 1931. It had been granted an exclusive license for such service by the Public Service Commission (PSC) and continues to provide the only local bus service between Syracuse and Little Falls. Prior to 1980, Greyhound Lines, Inc. (Greyhound) had the passenger franchise southwest and north of Syracuse. Greyhound provided service over Route 20 while Central used Route 5. Greyhound and Central established a schedule to reimburse each other for revenues generated by passengers traveling from one carrier's territory to the other's. After the State Thruway opened in 1950, the PSC ruled that a carrier servicing a route closely parallel to the Thruway could use the Thruway to provide express service between points it was already servicing, but could not use the Thruway to establish new services which would upset the competitive balance. This position was reaffirmed in 1961 when the PSC denied Central's application to provide Thruway service between Albany and Buffalo.

Subsequently, the Department of Transportation (DOT) was provided jurisdiction over carrier routes. In 1980, DOT granted Adirondack Transit Lines, Inc. (Trailways), permission to provide Thruway service between Albany and Syracuse, including the right to carry passengers between Syracuse and Utica, despite the fact that it had held off-Thruway authority for only part of that route. At the same time, DOT removed restrictions on Greyhound relative to Syracuse to Utica transit, thus allowing it to compete freely with Central. As a result, passengers traveling through Central's territory would choose the faster Thruway routes provided by Greyhound and Trailways rather than Central's Route 5 route which included a number of stops. Leaving Central with only a local service would have seriously damaged that company financially. Central commenced a CPLR article 78 proceeding challenging DOT's action, but the parties settled the matter through an

alternate distribution plan, the termination of which by DOT is the subject of this proceeding.

Pursuant to Transportation Law § 18-b, DOT is authorized to make operating assistance payments to public transportation systems, including bus companies, which payments are calculated according to a formula set forth in 17 NYCRR 975.12 and are paid quarterly. Central has been receiving such assistance payments (referred to as STOA) since 1979. In 1981, DOT determined that its action in allowing Greyhound and Trailways to compete directly with Central would cost Central about $175,000 per year. In order to allow Central to remain viable, and thus continue the only local bus service between Little Falls and Syracuse, DOT devised "alternate" State operating assistance which was also to be paid quarterly. The four counties involved and the three carriers were parties to the contracts; DOT drafted the contracts but was not a party thereto. Although it is clear that the plan arose out of the dispute concerning the deregulation of Greyhound and Trailways along Central's route, it was not formally a settlement of the litigation commenced by Central. The alternate assistance is paid outside of STOA and is authorized by the Legislature in the annual local assistance State budget bills. Under such plan, Central received $43,750 for the last quarter of 1981 and received $175,000 in 1982, 1983 and 1984. After making the first quarter payment of $43,750 in 1985, DOT decided to discontinue the alternate assistance program. Central will continue to receive STOA payments and only the continuation of the alternate assistance is at issue here.*

Central commenced the instant CPLR article 78 proceeding challenging DOT's decision to terminate the alternate assistance plan and named DOT, the four counties involved and Greyhound and Trailways as respondents. Special Term found that the termination of the alternate assistance plan was arbitrary and capricious, and granted the petition. DOT and Greyhound have appealed.

---

* Central's STOA and alternate assistance payments have been:

| | | |
|---|---|---|
| 1979 | $ 76,626 | $ 0 |
| 1980 | 148,910 | 0 |
| 1981 | 146,547 | 43,750 |
| 1982 | 212,344 | 175,000 |
| 1983 | 265,692 | 175,000 |
| 1984 | 283,380 | 175,000 |
| 1985 | 265,757 | 43,750 |
| 1986 | 283,403 | 0 |

■ ■ In reviewing a determination of an agency made without a hearing, the test is "not whether the court would have made a different determination if it were sitting as respondent, but rather, whether respondent's view rests on an adequate and rational basis and cannot be viewed as arbitrary and capricious" *(Matter of Mobil Intl. Fin. Corp. v New York State Tax Commn.,* 117 AD2d 103, 107). Payments under an alternate assistance plan are discretionary, unlike STOA payments which are mandatory. However, even discretionary actions may not be taken in an arbitrary or capricious manner. Further, judicial review is limited to the "grounds invoked by the agency, and if those grounds are insufficient or improper, the court is powerless to sanction the determination by substituting what it deems a more appropriate or proper basis" *(Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 57 NY2d 588, 593). Here, without any input from the four counties involved or the three carriers, DOT simply issued a letter dated February 27, 1985 stating that alternate assistance payments would cease with the March 1985 payment. The only reason offered for the termination of the program is the statement, "With the Bus Regulatory Reform Act of 1982 and its opening-up of all interstate corridors to competition, the extraordinary assistance to CNYCL can no longer be justified." This bald assertion hardly suffices as a rational basis for DOT's decision. As part of its answer to Central's petition, DOT included an affidavit by one of its officials amplifying somewhat on the reason for termination of the alternate assistance program. As noted earlier, judicial review of an agency decision is limited to the reasons given by the agency in its decision *(supra,* p 593; *see, Matter of Montauk Improvement v Proccacino,* 41 NY2d 913). An agency cannot use its answer in a CPLR article 78 proceeding as a substitute for providing a rational reason in its determination.

■ We note, as did Special Term, that DOT is not bound to continue the alternate assistance program indefinitely. We simply hold that if it decides to terminate such program, such decision must have a rational basis which must be articulated so as to permit judicial review.

■ Finally, we agree with Greyhound that the petition as against it should have been dismissed since it cannot provide any relief to petitioner *(see, Matter of Burke v Sugarman,* 35 NY2d 39, 45; *Matter of Willcox v Stern,* 18 NY2d 195).

KANE, CASEY, WEISS and LEVINE, JJ., concur.

Judgment modified, on the law, without costs, by reversing so much thereof as denied the motion of respondent Greyhound Lines, Inc., to dismiss the petition against it; motion granted and petition dismissed against said respondent; and, as so modified, affirmed.