Spain, J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which denied petitioner’s request for a refund of corporate franchise tax imposed under Tax Law article 9-A.
Petitioner is a New York corporation that manufactures and sells office equipment and supplies and provides related services. It sells its goods and services outright and, more commonly, through a variety of contractual pay-over-time financing agreements that bundle the goods, services and/or supplies for its governmental and nongovernmental customers. At issue *1263 here are two types of financing agreements provided to petitioner’s governmental customers: (1) fixed purchase option leases in which petitioner retains ownership of the equipment for the term of the agreement, at the end of which the customer has the option of purchasing it, and (2) equipment equity plans, known as installment sales, in which title is transferred to the customer at the beginning of the contract term with the purchase price paid in installments that include principal, interest and sometimes service or supply charges. Petitioner filed corporate franchise tax returns (see Tax Law art 9-A) for years 1997, 1998 and 1999 in which it treated the subject financing agreements with its governmental customers (hereinafter the finance agreements) as “business capital” and the interest income portion of the government customers’ monthly payments as “business income” (see Tax Law § 208 [7], [83). In 2001, petitioner filed amended franchise tax returns that treated the subject finance agreements as “other securities” for purposes of the definition of “investment capital” under Tax Law § 208 (5), thus reclassifying the interest income that it received under the finance agreements as “investment income” under Tax Law § 208 (6). Based upon these changes, petitioner requested refunds from respondent Department of Taxation and Finance for the tax years in issue.
In 2005, after an audit, the Department issued a notice of dis-allowance of the refunds requested and, in 2008, after a conciliation conference, the refunds were denied and the disallowance sustained. Upon petitioner’s administrative appeal and the parties’ stipulation,[1] an Administrative Law Judge determined that the interest income qualified as investment income and granted the refunds requested. On the Department’s appeal, respondent Tax Appeals Tribunal reversed and denied the refunds, determining that income derived from the finance agreements is not “investment income” under Tax Law § 208 (6) because the agreements are not “stocks, bonds [or] other securities,” i.e., they do not constitute income from “investment capital” under Tax Law § 208 (5). Petitioner instituted this CPLR article 78 proceeding seeking review of the Tribunal’s determination (see Tax Law § 2016).
Petitioner’s corporate franchise tax for the years in issue was computed using separate calculations for its business income and its investment income (see Tax Law former § 210 [1] [a]; [3] [a], [b]). The disputed issue here is whether petitioner’s income from the subject finance agreements constitutes business *1264 income, as the Tribunal concluded, or investment income, as petitioner contends.[2] Business income is defined as “entire net income minus investment income” (Tax Law § 208 [8]); investment income, as relevant here, is defined as “income . . . [derived] from investment capital” less allowable deductions (Tax Law § 208 [6]), which is “investments in stocks, bonds and other securities, corporate and governmental, not held for sale to customers in the regular course of business” (see Tax Law § 208 [5] [emphasis added]). The corporate franchise tax statutes do not offer a definition of the term security or the phrase “other securities.” The Department’s regulations provide that the phrase “stocks, bonds and other securities,” among other things, means “debt instruments issued by . . . government[s]” (20 NYCRR 3-3.2 [c] [2]). Petitioner’s main argument is that the finance agreements in issue constitute such debt instruments and, thus, the income derived therefrom is investment income under Tax Law § 208 (5) and (6). The Tribunal rejected this interpretation, and we confirm.
Under well-established law, “an agency’s interpretation of the statutes it administers must be upheld absent demonstrated irrationality or unreasonableness” (Lorillard Tobacco Co. v Roth, 99 NY2d 316, 322 [2003] [internal quotation marks and citation omitted]; see Matter of Chesterfield Assoc. v New York State Dept. of Labor, 4 NY3d 597, 604 [2005]; Matter of Island Waste Servs., Ltd. v Tax Appeals Trib. of the State of N.Y., 77 AD3d 1080, 1082 [2010], lv denied 16 NY3d 712 [2011]). “While as a general rule courts will not defer to administrative agencies in matters of pure statutory interpretation, deference is appropriate where the question is one of specific application of . . . broad statutory term[s]” by the agency charged with administering the statute, here, the Department (Matter of O’Brien v Spitzer, 7 NY3d 239, 242 [2006] [internal quotation marks and citations omitted]; see Lorillard Tobacco Co. v Roth, 99 NY2d at 322-323; Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 *1265 [1980]; Matter of Mobil Intl. Fin. Corp. v New York State Tax Commn., 117 AD2d 103, 106-107 [1986]; compare Matter of Elmer W. Davis, Inc. v Commissioner of Taxation & Fin., 104 AD3d 50, 53 [2012]; Matter of Michael A. Goldstein No. 1 Trust v Tax Appeals Trib. of the State of N.Y., 101 AD3d 1496, 1497 [2012], lv denied 21 NY3d 860 [2013]). Likewise, “[t]he interpretation given to a regulation by the agency which promulgated it and is responsible for its administration is entitled to deference if that interpretation is not irrational or unreasonable” (Matter of 427 W. 51st St. Owners Corp. v Division of Hous. & Community Renewal, 3 NY3d 337, 342 [2004] [internal quotation marks and citation omitted]). “The task of evaluating the evidence and making a decision rests solely upon the administrative agency . . . and, if there are any facts or reasonable inferences from the facts to support the determination, it must be confirmed” (Matter of Mobil Intl. Fin. Corp. v New York State Tax Commn., 117 AD2d at 107 [citations omitted]; see Matter of Liberman v Gallman, 41 NY2d 774, 777 [1977]), regardless of “whether a rational alternative construction exists” (Matter of Custom Shop Fifth Ave. Corp. v Tax Appeals Trib. of State of N.Y., 195 AD2d 702, 703 [1993]). According deference to the Department’s interpretation (see Lorillard Tobacco Co. v Roth, 99 NY2d at 322-323; Matter of Siemens Corp. v Tax Appeals Trib., 89 NY2d 1020, 1022 [1997]), we conclude that the Tribunal rationally determined that the finance agreements do not constitute “stocks, bonds [or] other securities” within the meaning of Tax Law § 208 (5) and (6) or 20 NYCRR 3-3.2 (c) and, thus, income derived therefrom is business income and not investment income.
The franchise tax statutes do not define a security or the phrase “other securities,” and the regulation similarly does not provide a test to determine what constitutes a security for franchise tax purposes, but merely lists generic instruments that are included within the phrase “other securities,” creating some ambiguity as to what is included (20 NYCRR 3-3.2 [c]; see Matter of Mobil Intl. Fin. Corp. v New York State Tax Commn., 117 AD2d at 107). The parties agree that the finance agreements here do not constitute “stocks” or “bonds.” By definition, to be included as “other securities” and, thus, investment capital, the agreements must be “securities” (Tax Law § 208 [5] [emphasis added]). We discern no basis upon which to disturb the Tribunal’s reasoned determination that the agreements here do not, under any definition or test, qualify as “securities,” and that classifying as securities what are essentially no more than basic sale or lease contracts between petitioner and its governmental customers, as urged by petitioner, would be contrary to the statutory language and legislative intent.
*1266 To begin, under statutory principles of construction, in context the phrase “other securities” is limited to security instruments similar or of a like nature to stocks and bonds (see Uribe v Merchants Bank ofN.Y, 91 NY2d 336, 340 [1998] [under the principle of ejusdem generis — of the same kind — the scope of general statutory language, if unclear, is limited by specific terms or phrases that precede it, where the preceding terms/ phrases are themselves of a similar nature]; McKinney’s Cons Laws of NY, Book 1, Statutes § 239 (b)]). Further, in the absence of a statutory test or definition, we look to the “plain meaning” of the words (Matter of Raynor v Landmark Chrysler, 18 NY3d 48, 56 [2011] [internal quotation marks and citation omitted]) and to the “well settled legal meaning” given a term or phrase in case law (Matter of Moran Towing & Transp. Co. v New York State Tax Commn., 72 NY2d 166, 173 [1988] [internal quotation mark and citation omitted]; Matter of Yellow Book of N.Y., Inc. v Commissioner of Taxation & Fin., 75 AD3d 931, 932 [2010], lv denied 16 NY3d 704 [2011]).
In “determining whether a particular instrument is properly labeled a security, it is appropriate to look at its function and search for substance over form with emphasis on economic realty” (Matter of Pohatcong Invs. v Commissioner of Taxation & Fin., 156 AD2d 791, 792 [1989] [internal quotation marks and citation omitted]). Here, no evidence was adduced that the agreements (1) were customarily, or ever, sold in the open market or on a recognized exchange or designed as a means of investment, as are stocks and bonds, (2) were commonly recognized by investors as securities, or (3) bear any similarity to stocks and bonds (see Matter of Mobil Inti. Fin. Corp. v New York State Tax Commn., 117 AD2d at 108; Matter of International Harvester Co. v State Tax Commn., 58 AD2d 125, 127 [1977]; cf. Matter of Avon Prods, v State Tax Commn., 90 AD2d 393, 394-395 [1982]).[3] The Tribunal properly looked to securities law to aid its interpretation of the Tax Law, as courts in this state have done (see Matter of Pohatcong Invs. v Commis *1267 sioner of Taxation & Fin., 156 AD2d at 792; Matter of Carret & Co. v State Tax Commn., 148 AD2d 40, 42 [1989]). Utilizing the seminal securities law test accepted in New York for whether an interest constitutes a security, we find — looking at the “economic realities [of] the transaction^]” — that the subject finance agreements generate income based on their specific contractual terms; they are not securities, as they do not involve “an investment of money in a common enterprise with profits[4] to come solely [or substantially] from the efforts of others [i.e., the promoter or a third party]” (All Seasons Resorts v Abrams, 68 NY2d 81, 92 [1986] [internal quotation marks and citations omitted]; see SEC v W.J. Howey Co, 328 US 293, 298-299, 301 [1946] [the Howey test]; People v First Meridian Planning Corp., 201 AD2d 145, 151-152 [1994], affd 86 NY2d 608, 618-620 [1995]; People v Fleishman, 163 AD2d 148 [1990], lv denied 76 NY2d 939 [1990]; Matter of Carret & Co. v State Tax Commn., 148 AD2d at 42 [using the Howey test to ascertain meaning of “other securities” in Tax Law]). Likewise, under another securities law test recognized in New York, as contracts to rent or purchase equipment at a contractual rate, the agreements are not used “for the purpose of financing enterprises and promoting a distribution of rights in or obligations of such enterprises” or “designed as a means of investment” (Matter of Waldstein, 160 Misc 763, 767 [1936], as recognized in All Seasons Resorts v Abrams, 68 NY2d 81, 92, 94 [1986]; see Matter of Pohatcong Invs. v Commissioner of Taxation & Fin., 156 AD2d at 792). Given that the finance agreements are not of a similar nature to stocks or bonds and do not fit within any recognized test or “well settled legal meaning” for securities, the Tribunal rationally concluded that they cannot be deemed investment capital as “other securities” under Tax Law § 208 (5).
We reach a similar conclusion concerning the Tribunal’s implicit rejection of the Administrative Law Judge’s conclusion, and petitioner’s argument, that the finance agreements are “other securities” in that they are “debt instruments” for purposes of 20 NYCRR 3-3.2 (c) (2). There is no evidence that the finance agreements were intended to be considered as debt instruments for purposes of franchise tax law or otherwise. Further, petitioner did not demonstrate that they were “issued by” any governmental entity within the meaning of this regulatory *1268 provision (20 NYCRR 3-3.2 [c] [2]), or should be considered debts of the governmental customers within the meaning of the state restrictions on the assumption of debt by governments (see NY Const, art VII, § 11; art VIII, § 2; General Municipal Law § 109-b [6] [a]). Moreover, petitioner makes no persuasive policy or legal argument as to why the finance agreements should qualify as “debt instruments” and, thus, “investment capital” under the statute and regulation where, as here, the lessee/purchaser of the equipment is a governmental entity, but not “investment capital” when the lessee/purchaser is a nongovernmental entity. Rejecting this anomalous interpretation, we read the regulation’s phrase “debt instruments” as not including these finance agreements, which are business capital whether the purchaser is a governmental or private entity (see 20 NYCRR 3-3.2 [c] [2], [3]; [d] [1] [iii] [“corporate debt instruments” are excluded from “other securities” and are not capital investment when they are acquired by petitioner-taxpayer for services rendered or for the sale, rental or other transfer of property, where the obligor — nongovernmental customer — is the recipient of services or property]). The interpretation urged by petitioner runs counter to the wording of the enabling statute, which clearly limits investment capital to “stocks, bonds and other securities” (Tax Law § 208 [5]), i.e., to investments in securities of a similar nature to stocks and bonds (see Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]; accord Matter of New York State Superfund Coalition, Inc. v New York State Dept. of Envtl. Conservation, 18 NY3d 289, 296 [2011]).
Finally, petitioner’s remaining arguments do not undermine the rationality of the Tribunal’s determination that the finance agreements in issue are business capital (see Tax Law § 208 [7]) and do not qualify as investment capital as “other securities” within the meaning of Tax Law § 208. (5) (see Matter of O’Brien v Spitzer, 7 NY3d at 242; Matter of427 W. 51st St. Owners Corp. v Division of Nous. & Community Renewal, 3 NY3d at 342).
Stein, J.P., McCarthy and Egan Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and the petition dismissed.

. The parties stipulated to the record and evidence, the amount of the refund ($1.2 million) and a waiver of a hearing.

. The import of the classification in dispute is that it affects petitioner’s state corporate franchise tax obligation for the years at issue in that it determines the method by which the income is allocated between New York and other taxing jurisdictions (see Tax Law § 209). Business income is allocated to New York based upon the amount of the taxpayer’s (i.e., petitioner’s) property, receipts and payroll in this state, whereas investment income is allocated to New York according to the extent of the presence in New York of the obligor or issuer of the stock, bond or other security that the taxpayer invests in and derives income from (see Tax Law § 210 [3] [a], [b]). For a corporation such as petitioner that has a substantial presence in New York, it is often advantageous to classify income as investment income rather than as business income because a smaller portion of its income may be allocated to New York.

. While much of the case law interpreting the phrase “other securities” under Tax Law § 208 (5) was decided under prior versions of the applicable regulations, now 20 NYCRR 3-3.2 as amended in 1989, we find that they are highly instructive in the absence of evidence that the regulatory amendments were intended to effect a fundamental change in the meaning and understanding of the term “securities” or in our reliance on securities law to determine whether an instrument is a security. That is, we read the old and new regulations alike as generally including within the phrase “other securities” only those instruments that are of a similar nature to stocks and bonds, bearing the same essential characteristics, unless a contrary intention is specifically indicated.

. Likewise, the finance agreements do not produce investment “profit” as contemplated in this context, as they do not produce “ ‘either capital appreciation resulting from the development of the initial investment’ or ‘participation in earnings resulting from the use of investors’ funds’ ” (All Seasons Resorts v Abrams, 68 NY2d at 92, quoting United Housing Foundation, Inc. v Forman, 421 US 837, 852 [1975]).