■ In the Matter of HOWARD JOHNSON COMPANY, Appellant, v STATE TAX COMMISSION, Respondent. — Appeal from a judgment of the Supreme Court at Special Term (Hughes, J.), entered July 8, 1983 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of the State Tax Commission sustaining a special franchise tax assessment imposed pursuant to article 9-A of the Tax Law.

Petitioner is a Maryland corporation which has been doing business in New York State since 1961, the year of its incorporation. Petitioner owned an investment portfolio which included a variety of short-term corporate obligations. Pursuant to article 9-A of the Tax Law, petitioner's income was divided into "business income" and "investment income" (Tax Law, § 208, subds 6, 8, 9), depending on whether it was traceable to "business capital" or "investment capital" (Tax Law, § 208, subds 5, 7). An allocation percentage is applied against each kind of income to arrive at the amount of income taxable by New York (Tax Law, § 210, subd 3). Petitioner originally reported business income and no investment income for the years 1973 and 1974. Subsequently it amended its returns to report substantial investment income and filed a claim for a refund of a portion of the franchise taxes paid in those years. The Department of Taxation and Finance allowed all but $15,438 of the refund. Petitioner challenged this determination before respondent, but its claim was rejected. The instant CPLR article 78 proceeding was then instituted and Special Term upheld respondent's determination. This appeal followed.

"As a general matter courts should defer to the interpretation given a statute by the agency charged with its enforcement if the interpretation is neither irrational, unreasonable, nor inconsistent with the governing statute" (*Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 57 NY2d 588, 597). And "where the interpretation of a statute or its application involves a special knowledge, courts regularly defer to administrative expertise" (*Matter of Burger King v State Tax Comm.,* 51 NY2d 614, 621).

"Where, however * * * the words of the statute are clear and the question simply involves the proper application of the provision 'there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations', especially when the interpretation, as embodied in a regulation directly contravenes the plain words of the statute" (*Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, supra,* p 597, quoting *Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459).

This case does not fall into the latter category mentioned above. The term "other securities" in subdivision 5 of section 208 of the Tax Law is patently ambiguous. The statute is part of a comprehensive and complex scheme for the imposition, computation, assessment and collection of the State franchise tax on business corporations (Tax Law, art 9-A). Respondent has been vested with broad powers to administer and enforce this and other taxing provisions, including the authority to make reasonable rules and regulations not inconsistent with the statutes (Tax Law, § 171). In view of the patent ambiguity of the statute, the regulation interpreting the term "other securities", in effect during the tax years at issue, cannot be said to run counter to the clear wording of a statutory provision. Under such circumstances, judicial review is limited to whether the interpretation embodied in the regulation is irrational or unreasonable (see *Matter of Consolidated Mut. Ins. Co. [Arcade Cleaning Contrs. — Superintendent of Ins.],* 60 NY2d 1, 8).

On the issue of the rationality of the regulation and respondent's reliance on the literal wording of that regulation, *Matter of International Harvester Co. v State Tax Comm.* (58 AD2d 125) appears to be dispositive. In *International Harvester (supra,* p 127), this court concluded that, by the express terms of the regulation, short-term notes were specifically excluded from the term "other securities" in subdivision 5 of section 208 of the Tax Law and that respondent was bound by the clear wording of its own regulation. Respondent subsequently amended the regulation to comport with its long-standing policy of including short-term notes and other commercial papers as "other securities" under certain limited circumstances. Inasmuch as the amendment occurred after the tax years at issue herein, respondent properly adhered to the express terms of the prior regulation, as directed by this court in *International Harvester,* and excluded the disputed short-term notes from the class of "other securities" as that term is used in subdivision 5 of section 208 of the Tax Law. Special Term's judgment dismissing the petition should, therefore, be affirmed.

Judgment affirmed, without costs. Main, J. P., Casey and Yesawich, Jr., JJ., concur.

Mikoll and Harvey, JJ., dissent and vote to reverse in the following memorandum by Mikoll, J. Mikoll, J. (dissenting). We respectfully dissent. The judgment entered at Special Term dismissing petitioner's application to annul the determination of the State Tax Commission should be reversed, the determination annulled, and the matter remitted to respondent for further proceedings. Special Term improperly relied on *Matter of International Harvester Co. v State Tax Comm.* (58 AD2d 125) and inappropriately applied the "reasonable construction" standard set forth in *Matter of Howard v Wyman* (28 NY2d 434) in interpreting the meaning of "other securities" as that term is used in subdivision 5 of section 208 of the Tax Law. The standard to be applied in reviewing the determination of respondent is one of pure statutory reading and analysis enunciated in *Kurcsics v Merchants Mut. Ins. Co.* (49 NY2d 451). A review of the history of the legislation and the language of the statute leads to the conclusion that the determination of respondent is arbitrary since it is inconsistent with the purpose and intent of the subject legislation.

Resolution of the instant controversy centers on subdivision 5 of section 208 of the Tax Law, which defines "investment capital", insofar as pertinent, as: "investments in stocks, bonds and *other securities,* corporate and governmental, not held for sale to customers in the regular course of business, exclusive of subsidiary capital and stock issued by the taxpayer" (emphasis added). The term "other securities" used in this subdivision is not defined by the statute. However, in 1962, the Department of Taxation and Finance promulgated former 20 NYCRR 3.31 (a), which limited "other securities" to: "securities issued by corporations of a like nature as stocks and bonds, which are customarily sold in the open market or on a recognized exchange, designed as a means of investment, and issued for the purpose of financing corporate enterprises and providing a distribution of rights in, or obligations of, such enterprises." The regulation went on to exclude: "corporate obligations not commonly known as securities, such as real property or chattel mortgages, contracts of sale, purchase money obligations, *short-term notes,* bills of lading, bills of exchange and other commercial investments" (emphasis added). Respondent, however, adopted a more narrow interpretation that allowed short-term notes within the term "other securities" in those instances when they: "are issued for the purpose of financing the activities of the issuers, are designed as a means of investment, [and] did not result from the

business activities of the taxpayer" (*Matter of Diamond Int. Corp.,* 5 NY Tax Cases [CCH], Transfer Binder, 1966-1968, par 98-933).

In *Matter of International Harvester Co. v State Tax Comm.* (*supra*), the taxpayer had relied upon the plain wording of 20 NYCRR 3.31 (c) in reporting its income from short-term notes as "business income". On the basis of the narrower interpretation, respondent ruled that International Harvester's short-term notes were investment income and assessed tax deficiencies for the years involved. This court annulled that determination, holding that 20 NYCRR 3.31 (c) " 'should be interpreted as the ordinary person reading it would interpret it' [citation omitted] and 'construed most strongly against the government and in favor of the citizen' [citation omitted]" (*Matter of International Harvester Co. v State Tax Comm., supra,* p 127). It was not necessary to the court's decision to analyze and construe the meaning of "other securities" as that term is used in subdivision 5 of section 208 of the Tax Law. The decision in *International Harvester* should be limited to the proposition that a taxpayer may take advantage of a literal reading of regulations promulgated by the Department of Taxation and Finance.

The case of *Kurcsics v Merchants Mut. Ins. Co.* (*supra,* p 459) sets forth the correct standard to be used in the instant case as follows: "Where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute. If its interpretation is not irrational or unreasonable, it will be upheld. (*Matter of Howard v Wyman,* 28 NY2d 434; cf. *Ostrer v Scheneck,* 41 NY2d 782, 786.) Where, however, the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight. And, of course, if the regulation runs counter to the clear wording of a statutory provision, it should not be accorded any weight. (See *Matter of Adams* [*Government Employees Ins. Co.*], 52 AD2d 118, 121.)"

*Kurcsics* requires that we analyze the subdivision in question and determine its purpose and intent. In doing this the words of this tax statute should be given their ordinary meaning and construed most strongly in favor of the taxpayer and against the government (see *Matter of Manhattan Cable TV Servs. v Freyberg,* 49 NY2d 868, 869). Further, in arriving at the definition of

securities as used in a statute, it is proper to look at the function of the instrument in question to search for substance over form (see *United Housing Foundation v Forman,* 421 US 837; see, also, *Matter of Avon Prods. v State Tax Comm.,* 90 AD2d 393, 394-395).

It should be noted in this connection that: "In general, it may be said that any form of instrument used for the purpose of financing and promoting enterprises, and which is designed for investment, is a security according to the modern meaning of that term" (*Matter of Waldstein,* 160 Misc 763, 767).

The purpose of the statute is also revealed from the history of the distinction in the New York franchise tax law between "business capital" and "investment capital". The history establishes that the "investment capital" category was created to cover intangible obligations not acquired in the ordinary course of business and leads to the conclusion that petitioner's investment in the short-term notes should be regarded as "investment capital" under subdivision 5 of section 208 of the Tax Law.

Initially, under section 209 of article 9-A of the New York franchise tax law (L 1917, ch 726, § 1; L 1918, ch 276, § 1), manufacturing and mercantile corporations were required to pay a tax on net income apportioned to New York State. The apportionment formula took into account intangible assets (other than stock) only to the extent that they were acquired for sales made or services performed, i.e., in the ordinary course of an active business. In 1920, this system was held unconstitutional as applied to interest on intangible assets not reflected in the apportionment formula (*People ex rel. Alpha Portland Cement Co. v Knapp,* 230 NY 48, cert den 256 US 702). Thereafter, the tax on business corporations was amended to exempt "holding companies" and "investment trusts", which subsequently were taxed separately. Although chapter 415 of the Laws of 1944 recombined into one the separate franchise taxes on business, investment and holding companies, the separate categories of business capital, investment capital and subsidiary capital have been retained to date (Tax Law, § 208, subds 4, 5, 7).

Reinforcing the existence of this distinction between income derived from ordinary business and income from investments and its application to the present case is the opinion of the Commissioner of the Department of Taxation and Finance expressed in a letter, wherein the Commissioner stated: "The reference to short-term notes in the quoted portion of the regulation (20 NYCRR 3.31 [c] issued March 14, 1962) was intended to exclude from investment capital short-term notes received by the taxpayer as a result of its business operations, particularly

notes received in payment for goods sold or services rendered. Since the notes held by the corporations mentioned in your letter are not of this character, it is my opinion that, these notes are other securities within the meaning of subdivision 5 of section 208 of the Tax Law" (letter of June 6, 1962 from Joseph H. Murphy, Commissioner of the Department of Taxation and Finance).

Moreover, subsequent to this court's decision in *Matter of International Harvester Co. v State Tax Comm. (supra)*, respondent repealed former 20 NYCRR 3.31 (c) and replaced it with 20 NYCRR 3-4.2 (c) and 3-4.3 (d), which *exclude* from the definition of investment capital and *include* within the definition of business capital only those short-term notes that are: "acquired in the ordinary course of trade or business for services rendered or for sales of property which is primarily held for sale to customers". Thus, it is abundantly clear that respondent, but for the *International Harvester* case, has consistently treated short-term notes of the kind at issue here as investment capital, and that such is further evidence of the purpose and intent of subdivision 5 of section 208 of the Tax Law. The history and the language of the statute clearly support the conclusion that the interpretation placed on the term "other securities" by respondent and Special Term is inconsistent with the intent of the legislation and the purpose of the subdivision in question. Consequently, respondent's determination is arbitrary and without a rational basis.

Special Term's judgment should therefore be reversed, the determination of respondent annulled, and the matter remitted to respondent for further proceedings not inconsistent herewith.