OPINION OF THE COURT
William F. O’Brien, III, J.
STATEMENT OF THE FACTS
Plaintiff Oneida Ltd. moves for summary judgment in this declaratory judgment action seeking a determination as to whether Utica Mutual or Republic Western, two of plaintiffs’ insurance carriers, will be obligated to provide coverage for any liability exceeding $1,000,000 (the purported limit of the Republic Western policy)[1] resulting from pending personal injury actions commenced by Darrin and Raymond Ketchum (the Ketchum brothers), two employees of Camden Wire Co., Inc. (Camden Wire), who were involved in a workplace accident in October 1992. Defendants Utica Mutual and Republic Western also move for summary judgment, each in their respective favor, alleging that, according to the terms and coverage of their respective insurance policies, they are not bound to *574 indemnify Oneida Ltd. for any third-party employer’s liability arising from the Ketchum brothers’ accident, beyond the $1,000,000 of liability Republic Western stipulated to pursuant to its policy.
The Ketchum brothers were seriously injured when they became entangled in cable which was being unspooled by a strander machine. The Ketchum brothers received their statutory benefits pursuant to the Workers’ Compensation Law and, thereafter, being unable to sue Camden Wire, their employer, directly because of the workers’ compensation bar, commenced personal injury actions against the manufacturer of the strander machine and several others. The manufacturer appeared, interposed answers and is currently defending the underlying personal injury actions.
Notes of issue have now been filed in the personal injury actions and the manufacturer has commenced third-party actions against Camden Wire, asserting claims for contribution and indemnity. The Ketchum brothers, in their respective complaints, seek damages of $10,000,000 and $50,000,000. Given the serious nature of the injuries and based on the recent settlement demands of the Ketchum brothers in the personal injury actions, it is apparent that the potential liability of Oneida Ltd.,[2] arising from the underlying third-party actions, is substantial and will, in all likelihood, exceed $1,000,000.
At issue in this action are the type and nature of the Republic Western policy and the Utica Mutual policy, the intended limitations of coverage and liability of such policies as evidenced by the express terms of the insurance contracts, and the legality of such purported coverage and liability limits in light of certain alleged statutory constraints within the Workers’ Compensation Law. These issues are specifically relevant as to their applicability to an employer who is accepted as a “self-insured” pursuant to Workers’ Compensation Law § 50 (3) and 12 NYCRR parts 315 and 316.
Oneida Ltd., at all times relevant hereto, was self-insured and its self-insurance program, as approved by the Workers’ *575 Compensation Board, provided that Oneida Ltd. would be financially responsible for the first $400,000 of any occurrence (the self-insured retention) and, thereafter, in addition to securing its statutory obligation (by the posting of a letter of credit), the acceptance of Oneida Ltd.’s plan required the purchase of excess reimbursement insurance to cover any statutory liability in excess of the self-insured retention. Oneida Ltd. purchased two policies, an excess workers’ compensation policy from Republic Western and a commercial umbrella liability policy from Utica Mutual, to provide coverage (and protect themselves from catastrophic losses) for amounts in excess of the self-insured retention.
I. The Republic Western Excess Workers’ Compensation Policy
Oneida Ltd. purchased an excess workers’ compensation policy from Republic Western on February 1, 1991, covering the Workers’ Compensation Laws of the States of Arkansas and New York. Camden Wire was a named insured under that policy as a wholly owned subsidiary of Oneida Ltd. The policy was subsequently amended by an anniversary endorsement, with the second annual policy period beginning on February 1, 1992 (bringing the Ketchum brothers’ Oct. 1992 accident within its coverage period).
As relevant to its coverage under the Workers’ Compensation Law in New York, the amount of Oneida Ltd.’s retention, set forth as item 5 on page 1 of the policy, was set in the statutory amount of $400,000 for each occurrence.[3] The policy also stated the agreed upon limits of Republic Western’s exposure for workers’ compensation liability and employer’s liability by incorporation of endorsements number 1 and number 2 which were attached to the policy.
Endorsement number 1 states that the coverage for Oneida Ltd.’s statutory liability under the Workers’ Compensation Law was unlimited. Endorsement number 2 states that the policy also provided coverage for employer’s liability coverage but that the employer’s liability coverage was limited to $1,000,000 per occurrence and had a $1,000,000 policy limit. Insuring agreement I.C. of the Republic Western policy states that the policy’s coverage includes protecting Oneida Ltd. from liability imposed by the “Law for Damages” as well as those sustained under the Workers’ Compensation Law. The policy *576 also, in the definition section, states that “[t]he term ‘Law for Damages’ shall not include any Workers’ Compensation Act.”
II. The Utica Mutual “Commercial Umbrella Liability Policy”
Oneida Ltd. purchased, in addition, from Utica Mutual, a commercial umbrella liability policy with a policy period from February 1, 1992 to February 1, 1993. Camden Wire was also a named insured under the terms of this umbrella policy, which, as stated on the first declaration page of the policy, provided up to $10,000,000 in coverage. The coverage form for the Utica Mutual policy, under coverage A, section I, states that, under the policy, Utica Mutual: “will pay those sums, in excess of the limits of liability under the terms of any ‘underlying insurance,’ that the insured becomes legally obligated to pay as damages because of the ‘injury’ or ‘wrongful act,’ to which this insurance applies, or would apply but for the exhaustion of its applicable limits of insurance.”
On the supplemental schedule of underlying insurance, also attached to the Utica Mutual policy, is specifically listed the Republic Western policy along with its policy number and a description of the coverage of the Republic Western policy. The Utica Mutual policy states the coverage of the Republic Western policy as “Employers’ Liability on Excess Workers’ Compensation Policy.” The Utica Mutual policy, in addition, states the limits of the Republic Western policy as: “$1,000,000 each accident/$1,000,000 each employee by disease/$l,000,000 policy limit excess of a self-insured retention of 350,000 in New York State. In New York State, Employers Liability is not applicable when New York Workers’ Compensation Law applies.” It is noteworthy also that the terms of coverage for the Utica Mutual umbrella policy define underlying insurance as “the liability insurance coverage provided under the policies shown in the Declarations,” and it is stated on the declarations page of the policy that the list of underlying insurance on the declarations page is supplemented by the “Supplemental Schedule of Underlying Insurance” which, as stated above, lists the Republic Western policy as an underlying insurance policy.
III. Plaintiff Oneida Ltd.’s Argument
Oneida Ltd. alleges that it purchased “seamless layers of insurance” consisting of a first layer of $1,000,000 in the form of an excess workers’ compensation policy (from Republic Western) and, in addition, a $10,000,000 umbrella policy (from Utica Mutual). Accordingly, Oneida Ltd. describes its position *577 of having purchased a total of $11,000,000 in insurance coverage from these two carriers and both carriers now disclaim any responsibility for any coverage beyond $1,000,000.
Oneida Ltd. avers that there is essentially one dispositive legal issue for the court’s determination herein: whether the Republic Western excess workers’ compensation policy was required to provide unlimited coverage beyond its stated policy limit of $1,000,000 for a third-party employer’s liability claim. According to Oneida Ltd., if Republic Western was so obligated to provide unlimited employer’s liability coverage, then it must cover any loss arising from the recently commenced third-party action. Oneida Ltd. alleges, on the other hand, that if, as Republic Western asserts, the Workers’ Compensation Law does not require such unlimited employer’s liability coverage, Republic Western is only responsible for up to the $1,000,000 limit in coverage and then Utica Mutual is responsible for any further liability up to the $10,000,000 limit of their umbrella policy.
Oneida Ltd., on this issue, contends that, under New York State law, Republic Western was not required to provide unlimited employer’s liability insurance given the type and purpose of the policy and that, therefore, Utica Mutual, because of its specific incorporation of the Republic Western policy as underlying insurance, is responsible for any losses over $1,000,000 arising from the subject personal injury actions.
In support of its motion, Oneida Ltd. has submitted, inter alia: an affidavit of Jack Leicher, the Director of Workers’ Compensation Regulatory Services, former Director of Self-Insurance and 32-year Workers’ Compensation Board employee; an affidavit of Paul Altruda, an Assistant Deputy Superintendent and Counsel in the New York State Insurance Department; selected portions of the New York Manual for Workers’ Compensation and Employer’s Liability Insurance; a copy of NY Circular Letter 1994-13 issued by the Insurance Department; and an affidavit of Joseph Convertino, the Vice-President of RMSCO, the insurance broker for Oneida Ltd. during 1990.
Director Leicher testifies in his affidavit that his job responsibilities include, among other things, regulating the activities of individual and group self-insurers insofar as they are affected by Workers’ Compensation Law § 50 (3) and the rules and regulations thereunder and that, for the last 17 years, he has been responsible for implementing New York State’s self-insurance law and the rules and regulations of the Workers’ *578 Compensation Board pertaining to self-insurance. Director Leicher further testifies as to the difference between a standard workers’ compensation policy, pursuant to Workers’ Compensation Law § 50 (1) and (2), which requires unlimited coverage in both parts I and II (i.e., workers’ compensation and employer’s liability) and an excess reinsurance policy purchased by a self-insurer, pursuant to 12 NYCRR 316.2, as required in part to prove to the Workers’ Compensation Board the self-insuring employer’s ability to satisfy its potential liability for workers’ compensation benefits in case of a catastrophic loss.
Director Leicher states that, with such an excess reinsurance policy (like the Republic Western policy), the rules governing standard workers’ compensation insurance policies do not apply to self-insurers. Director Leicher avers that the purpose of such excess reinsurance policies is only to guarantee the self-insured employer’s payment of any liability arising from workers’ compensation benefits per se and not third-party claims against the self-insured employer. Director Leicher further states that most excess workers’ compensation policies that are reviewed by the Workers’ Compensation Board are not unlimited in their coverage of employer’s liability and that such a policy, even without any employer’s liability coverage, does not violate any statute or regulation and may be acceptable to the Chair of the Workers’ Compensation Board.
In conclusion, Director Leicher states that part II coverage for employer’s liability is irrelevant to the consideration for acceptance of a self-insurer’s plan for coverage and that the lack of such coverage in no way would have affected the consideration of Oneida Ltd.’s application for approval of self-insurance.
Assistant Deputy Altruda, in his affidavit, refers to Director Leicher’s testimony and states his concurrence with its content as regarding Director Leicher’s statements that a self-insurer, as opposed to an employer who chooses to purchase a standard workers’ compensation policy, is different in that the self-insurer is not required by law to provide unlimited coverage for employer’s liability. Assistant Deputy Altruda also states that, after a review of New York State Insurance Department procedures, in the area of workers’ compensation policy form approval, he found no Insurance Department requirement that employer’s liability coverage under excess insurance forms be unlimited in order for the insurance form to be used, as opposed to the standard workers’ compensation policy form on which the employer’s liability shall not be limited.
The New York Manual for Workers’ Compensation and Employer’s Liability Insurance, which addresses the necessary *579 content and interpretation of the standard workers’ compensation policy form, states that there is “no limit of liability in the standard policy” for workers’ compensation and for employer’s liability. In opposition to Utica Mutual’s argument that this statement supports their allegation that the employer’s liability coverage under the Republic Western policy must be unlimited by law, Oneida Ltd. alleges that Utica Mutual ignores the fact that the Manual only refers to standard workers’ compensation policies, not to excess reinsurance policies purchased by employers who choose to self-insure as an option to purchasing the standard policy.
Oneida Ltd. alleges that the regulations for self-insured employers are established, not in the Manual, but rather in part 316 of the workers’ compensation rules and regulations (12 NYCRR) and that nowhere in part 316 is there any requirement that a self-insurer obtain unlimited, or any, employer’s liability coverage. Further in support of its position, Oneida Ltd. notes the NY Circular Letter 1994-13, in which the Insurance Department stated that the coverage provided by a self-insurer’s excess policy “is not considered to be workers’ compensation insurance since * * * no statutory workers’ compensation benefits are paid directly to an injured employee under the excess policy.”
Oneida Ltd. also submits an affidavit of RMS CO Vice-President Convertino, who testifies that, during 1990 as the broker of record for Oneida Ltd., the issue arose as to whether the Republic Western policy should be listed on the schedule of underlying insurance that Utica Mutual would be covering with its umbrella policy. Vice-President Convertino further testifies that he had numerous conversations with Oneida Ltd. and David Wafer, another insurance broker for Oneida Ltd., and that he informed them that the requirement for unlimited employer’s liability coverage only applies to a standard workers’ compensation policy, not to an excess reinsurance policy. He also testifies that he informed Mr. Wafer and Oneida Ltd. that it was necessary that Utica Mutual include on their schedule of underlying coverage the Republic Western policy and that he later learned that the policy was so included on the schedule.
Oneida Ltd. alleges that, given this evidence that Republic Western was not required by law to provide unlimited employer’s liability coverage in the excess workers’ compensation policy and that the Utica Mutual insurance contract unambiguously states that the Republic Western policy is included in *580 the underlying insurance, the conclusion is compelled that Utica Mutual is liable to provide umbrella coverage up to the amount of $10,000,000 for any of Oneida Ltd.’s liabilities from the third-party claims in the personal injury actions. In the alternative, Oneida Ltd. alleges that, if it is determined that Republic Western was required by law to provide unlimited employer’s liability coverage, then Republic Western, not Utica Mutual, is liable to cover all of Oneida Ltd.’s liabilities resulting from the third-party claims.
IV. Defendant Republic Western’s Argument
Republic Western opposes that part of Oneida Ltd.’s motion which seeks, as alternative relief, a declaration that Republic Western is obligated to provide unlimited employer’s liability coverage under the excess workers’ compensation policy. In addition, Republic Western makes its own cross motion for summary judgment declaring that it had no duty to provide such unlimited employer’s liability coverage and that the policy limit of its excess workers’ compensation policy is $1,000,000.
Republic Western alleges, in support of its cross motion, that there is no language in its policy that would suggest that Republic Western should be required to provide employer’s liability coverage beyond the stated $1,000,000 policy limit and that the only way the court could determine that its policy provides unlimited employer’s liability coverage is if such coverage was legally mandated at the time that the policy was issued. In opposition to such a determination, and in support of its allegations that the terms and coverage of its policy comply with applicable New York State law, Republic Western has adopted and incorporated Oneida Ltd.’s arguments which allegedly demonstrate that New York State law does not require that excess workers’ compensation (reinsurance) policies issued to self-insureds provide unlimited employer’s liability coverage.
V. Defendant Utica Mutual’s Argument
Utica Mutual opposes both the motion for summary judgment by Oneida Ltd. and the cross motion for summary judgment by Republic Western and makes its own motion for summary judgment against both Oneida Ltd. and Republic Western. Utica Mutual contends that its commercial umbrella liability policy does not provide coverage for any losses that Oneida Ltd. may suffer from the third-party claims in the Ketchum brothers’ personal injury actions. Utica Mutual bases its contention of no coverage on its allegation that it is a stan *581 dard and required practice for umbrella liability policies issued in New York State to not underwrite workers’ compensation and employer’s liability of their insureds.
In support of its motion, Utica Mutual has submitted, among other things, a copy of a June 28, 1988 General Counsel opinion from the New York Insurance Department entitled “Workers’ Compensation/Employer Liability Policies and Limits of Liability Under Coverage B”. Utica Mutual, in pertinent part, cites the General Counsel’s opinion: “The unlimited liability language of the New York Workers’ Compensation policy has been in effect for more than 40 years. The New York State Department of Insurance has never approved a Workers’ Compensation policy [form][4] that would impose a limit on a carrier’s liability for compensable injury which includes the employer’s liability * * * The concept of unlimited coverage for employer liability is such a long standing policy in this state that the Department has prohibited all property/casualty companies which underwrite commercial umbrella policies in this state from including in their rate and form filings the computation of employer liability and workers’ compensation for their umbrella premiums.”
Utica Mutual also has submitted a copy of Circular Letter No. 17 (dated Oct. 16, 1987) issued by the New York State Insurance Department. Circular Letter No. 17, in pertinent part, states: “In New York State, Coverage A is unlimited with respect to the insured’s employees who sustain bodily injury by accident or disease arising out of and in the course of employment when the employee and the insured employer are subject to the New York State Workers’ Compensation Law * * * These Workers’ Compensation rules and requirements also apply to Employer’s Liability Coverage B. Therefore, commercial umbrella policies should not contemplate these coverages. Consequently, rate and form filings of Employer’s Liability and Workers’ Compensation should not be shown as underlying coverages nor included in computing the umbrella premium.” Utica Mutual’s position, regarding the General Counsel opinion and Circular Letter No. 17, as stated in the affidavit of Utica *582 Mutual’s attorney, is that “it is clear that the Insurance Department position includes a statement that there is no limit on Employer’s Liability coverage in New York State.”
Given this allegation, Utica Mutual contends that the terms and coverage of its policy should be read in light of this alleged policy of the New York State Insurance Department and if it was the intention of Oneida Ltd. to procure additional insurance coverage, it should have requested and specifically obtained a separate policy. Utica Mutual alleges also, even though it doesn’t deny that it listed the Republic Western policy on its schedule of underlying insurance and identified the $1,000,000 policy limit of the Republic Western policy, that the policy clearly disclaimed its coverage for all employer’s liability by its statement that “In New York State, Employer’s Liability is not applicable when New York Workers’ Compensation Law applies.” Utica Mutual claims that this statement made clear its position that the underlying policy was unlimited and that no umbrella coverage was provided with the Republic Mutual policy as an underlying insurance policy.
In response to the affidavit of Director Leicher, submitted by Oneida Ltd., Utica Mutual submits a subsequent letter from Director Leicher (dated Dec. 12, 1997) that was prepared in response to questions propounded to him by Utica Mutual’s attorney. The letter of Director Leicher states, inter alia, that the Workers’ Compensation Board: “does not review the employer’s liability component in determining an employer’s ability to self-insure their Workers’ Compensation liability”; “has no policy, with regard to self-insurance programs carrying a specific amount of employer’s liability coverage”; “has never issued a policy statement, position, opinion of counsel, or other written guidance, with respect to required limits for employer’s liability coverage”; and “is satisfied with the limits of excess insurance coverage [pertaining to statutory workers’ compensation] provided by Republic Insurance, in connection with the coverage provided to Oneida Ltd.”.
Director Leicher further states in his letter that “[t]he Workers’ Compensation Board will not assume jurisdiction or offer an opinion, in regard to the amount or type of excess insurance coverage available to a self-insured for employer’s liability. We are only concerned that there is appropriate coverage for liability incurred under the New York State Workers’ Compensation Law.” Utica Mutual alleges that this letter makes clear that Director Leicher, as the Director of Self-Insured Workers’ Compensation Programs, has no responsibility for employer’s *583 liability insurance and, thus, takes no position with regard to issues related to employer’s liability coverage. Utica Mutual alleges that, accordingly, the only definitive policy source on the record is the above statements of the Insurance Department since “thé policy issued by Republic Western is an insurance policy within the purview of that department, not within the purview of Director Leicher’s department.”
Utica Mutual further alleges that Republic Western itself created an ambiguity as to the amount of their limit of liability when they filed a certificate of insurance with the New York State Workers’ Compensation Board describing the limits of its policy as “statutory”, rather than the $1,000,000 limit which the policy allegedly contains. Utica Mutual contends that this “filing made by Republic Western with the government agency that had responsibility to pass on the propriety of this insurance coverage, did not disclose this limit of liability which was intended to be applicable.” Thus, Utica Mutual alleges that if there were any ambiguities in the coverage of the Republic Western policy they were created by Republic Western and that Utica Mutual, having relied on the filing in determining what underlying coverage existed, should not be held liable for Republic Western’s inconsistent statements.
Utica Mutual also submits an affidavit and a supplemental affidavit of Jo Anne Seccurra, an Underwriting Manager for Utica Mutual who is familiar with and worked on the Oneida Ltd. policies. Manager Seccurra states that Republic Western tried to limit its employer liability matter “in a fashion which we believe is entirely improper.” Manager Seccurra states that her office utilized the New York Manual for Workers’ Compensation and Employer’s Liability Insurance, Circular Letter No. 17, and the Insurance Department’s General Counsel opinion (all discussed above) to determine their policy obligations and requirements in regard to workers’ compensation and employer’s liability coverage.
Manager Seccurra further alleges that, upon learning of the purported limit of the Republic Western policy, and after Dave Wafer, one of Oneida Ltd.’s brokers, informed Utica Mutual of his belief that the Republic Western policy would provide unlimited employer’s liability coverage in New York, Utica Mutual then determined that Republic Western’s effort to limit its employer’s liability insurance in New York was not valid *584 and would not be sustained.[5] Manager Seccurra then alleges that, given their understanding of the relevant law, their statement on the policy’s schedule of underlying insurance that “In New York State, Employer’s Liability is not applicable when New York Workers’ Compensation Law applies” should be interpreted as actually meaning “Employer’s Liability on the Republic Western policy is unlimited because a finite limit does not apply in New York State.” In conclusion, Manager Seccurra states Utica Mutual’s position that despite being labeled as an “excess policy” the policy issued by Republic Western is a policy of insurance for workers’ compensation and employer’s liability and is governed by the Workers’ Compensation Law and the Insurance Department states that employer’s liability coverage cannot be limited.
RELEVANT LAW/ANALYSIS
I. Introduction
The initial issue to be determined is whether an “excess workers’ compensation policy” issued to an employer who self-insures with the permission of the Chair of the Workers’ Compensation Board, and obtains such policy in accordance with the Workers’ Compensation Law and 12 NYCRR 316.2, in order to provide security against catastrophic loss, is required, as a matter of law, to provide an unlimited policy coverage for employer’s liability insurance coverage issued within the same policy.
If unlimited employer’s liability coverage is mandated in such a policy under New York State law for the self-insuring employer, then endorsement number 2 of the Republic Western excess workers’ compensation policy, which purports to limit policy coverage to $1,000,000 for employer’s liability coverage, is invalid as a matter of law and Republic Western is liable to indemnify Oneida Ltd. for any and all losses it suffers from the subject third-party claims in the Ketchum brothers’ personal injury actions.
On the other hand, if, as it is alleged by Oneida Ltd. and Republic Western, New York State law allows the issuance of *585 such an insurance policy which limits employer’s liability coverage for a self-insuring employer, as allegedly is the case with the Republic Western policy herein, then Republic Western is responsible to indemnify Oneida Ltd. only for those losses up to the $1,000,000 limit stated in endorsement number 2. Finally, if it is determined that Republic Western is not responsible for any amount over $1,000,000 of employer’s liability coverage, an inquiry must be made into the language and terms of the Utica Mutual insurance policy to determine if such language and terms provide or, as Utica Mutual avers, disclaim umbrella coverage up to the policy limit of $10,000,000 with the Republic Western policy as an underlying insurance policy.
II. The Self-Insured Employer under the Workers’ Compensation Law and the Standard Workers’ Compensation Policy vs. the Excess Reinsurance Policy
The Workers’ Compensation Law provides that every employer must provide for the payment of benefits to its employees as required by the Workers’ Compensation Law. Three methods by which such coverage for workers’ compensation benefits may be provided are presented in Workers’ Compensation Law § 50. An employer may: pursuant to section 50 (1), purchase a policy from the State Insurance Fund; pursuant to section 50 (2), purchase a workers’ compensation insurance policy from an insurance company authorized to provide such coverage by the New York State Superintendent of Insurance; or, pursuant to section 50 (3), self-insure with the permission of the Chair of the Workers’ Compensation Board upon proof of financial security and ability to pay compensation benefits when an injury occurs.
The great majority of employers meet their potential liability under the Workers’ Compensation Law by purchasing workers’ compensation insurance as allowed by section 50 (1) or (2). It is a well-recognized truth that because: “The risks and changes of business are such that it is evident that the ordinary individual or firm cannot qualify as a self-insurer [and] large corporations whose continuous existence is assured, or who are able to deposit the securities required, can qualify as self-insurers. In effect, therefore, the law requires that the ordinary individual and firm, and perhaps the great mass of employers, must insure in the State fund or otherwise.” (Matter of McQueeney v Sutphen & Myer, 167 App Div 528, 532 [3d Dept 1915].) Accordingly, the majority of employers in New York *586 State, being unable to afford to self-insure pursuant to section 50 (3), comply with the requirements of the Workers’ Compensation Law by the purchase of a “Standard Workers’ Compensation Insurance Policy” (or Standard Policy).
Rule II of the Workers’ Compensation Manual provides that “New York Workers’ Compensation insurance may be provided only by the Standard Policy.” The requirements for what is, therefore, referred to as the “Standard Policy” are provided by myriad rules and regulations, including the requirement set forth in rule VIII of the Workers’ Compensation Manual that there be unlimited coverage for both statutory liability, referred to as part one coverage, and employer’s liability (for third-party claims), referred to as part two coverage.[6] Rule VIII further provides that “A policy may be written to provide liability insurance only, not in combination with workers’ compensation insurance. Such a policy shall exclude any obligation to pay workers’ compensation benefits.” This statement recognizes that an employer’s liability insurance policy may be wholly separate and divorced from a workers’ compensation insurance policy and from the Workers’ Compensation Law and inserting such exclusionary language in the policy, inter alia, ensures no confusion concerning constraints on applicable policy limits.
For those employers who choose, pursuant to section 50 (3), to self-insure with the permission of the Chair of the Workers’ Compensation Board[7] upon proof of financial security and ability to pay benefits when an injury occurs (i.e., usually only the largest and wealthiest corporations), there is a different regime of rules and regulations governing the requirements for the employer to be accepted as a self-insurer and how much proof it must provide of its ability to satisfy its outstanding and potential liability under the Workers’ Compensation Law. The sections governing self-insurers are promulgated under the Workers’ Compensation Law and set forth in 12 NYCRR parts 315 and 316.
12 NYCRR 315.2 (a) states, in pertinent part, that
“The employer shall execute and file with the chairman an agreement * * *
*587 “to pay to injured employees and to the dependents of deceased employees * * * all compensation as required by the provisions of the Workers’ Compensation Law” (emphasis added).
Workers’ Compensation Law § 2 (6) defines the term “compensation” to refer to the money allowance (and funeral expenses in the event of death) payable to an injured employee as a result of an injury which arose out of and in the course of the employment. Given this definition, it is noteworthy that the agreement filed by the self-insuring employer with the chairman contains no language indicating a concern that a self-insured employer promise to purchase a specific amount (or any) employer’s liability coverage for third-party claims.
12 NYCRR 315.2 (b) further states that the employer must “deposit with the chair securities, and/or cash, and/or a surety bond, and/or irrevocable letters of credit, in form approved by the chair”. The amount of the security required is determined by the chair and, according to 12 NYCRR 316.1, dependent upon the employer’s outstanding and prospective liability for statutory workers’ compensation benefits. In addition to such provision of security, the employer applying for self-insured status may, at the discretion of the chair and pursuant to 12 NYCRR 316.2 (a), have to “provide security against catastrophic loss arising out of one accident, by filing with the chair the carrier’s certification of an excess, reinsurance contract issued to the self-insurer in form, content and amounts acceptable to the chair * * * and must contain specific coverage for workers’ compensation.”
It is undisputed that Oneida Ltd. is, and has been at all times relevant hereto, a self-insurer pursuant to Workers’ Compensation Law § 50 (3) and the rules and regulations set forth in 12 NYCRR parts 315 and 316. In order to qualify as a self-insurer, and in accordance with the directives of the chair, Oneida Ltd. had to, in addition to securing its statutory obligation by posting a letter of credit, purchase an excess reinsurance policy (pursuant to 12 NYCRR 316.2) to cover any liability in excess of the self-insured retention. Republic Western’s certificate of excess reinsurance contract for self-insurer, which it submitted to the Workers’ Compensation Board on behalf of Oneida Ltd., is attached as exhibit B to Republic Western’s notice of motion. There is no question, therefore, that the Republic Western policy (at least the unlimited excess coverage of compensation benefits) served, and was accepted by the Workers’ Compensation Board, as complying with the requirements for Oneida Ltd. to be accepted as a self-insurer.
*588 III. Clarification of Policy Limit Requirements with Standard Workers’ Compensation Policies vs. Excess Policies Required for Acceptance of Self-Insureds
As shown above, a reading of the plain language of the Workers’ Compensation Law, and the rules and regulations applicable to self-insurers, makes it clear that the excess reinsurance policy that Oneida Ltd., as a self-insurer, purchased is contemplated by the Workers’ Compensation Board as a guarantee that Oneida could cover its statutory “compensation” benefits liabilities, with no concern or reference to any employer’s liability or third-party liability insurance. In addition, when juxtaposed with the language set forth in the Workers’ Compensation Manual, which undeniably states a requirement that all Standard Policies have unlimited employer’s liability coverage along with unlimited workers’ compensation coverage, the language of 12 NYCRR 316.2 indicates that the required excess reinsurance policy was not intended to be of the same character as the Standard Policy.
The Superintendent of Insurance’s Circular Letter 1994-13, regarding excess workers’ compensation insurance policies for self-insured employers, explains the State Insurance Department’s position that the coverage provided by “excess reinsurance policies”, as required under 12 NYCRR 316.2, is substantially similar to “personal injury liability insurance” and is “not considered to be workers’ compensation insurance * * * since no statutory workers’ compensation benefits are paid directly to an injured employee under the excess policy” (emphasis added). Circular Letter 1994-13 further notes that, in such excess reinsurance policies, there also is no provision that an employee may make a direct claim against the insurance carrier for any amounts covered in the excess insurance policy in the event of the employer’s insolvency or termination of operations.[8]
The divergence in character between workers’ compensation insurance for compensation benefits per se and employer’s li *589 ability or third-party liability is also, as noted above, contemplated in rule VIII of the Workers’ Compensation Manual, which provides that “A policy may be written to provide liability insurance only, not in combination with workers’ compensation insurance. Such a policy shall exclude any obligation to pay workers’ compensation benefits.” It is noteworthy here that the Republic Western policy states that the policy’s coverage includes protecting Oneida Ltd. from liability imposed by the “Law for Damages” as well as those sustained under the Workers’ Compensation Law. Also, however, the definition section clearly states that “[t]he term ‘Law for Damages’ shall not include any Workers’ Compensation Act”, clearly distinguishing between the two areas of coverage in the Republic Western policy.
This distinction between the Standard Policy and the excess policy was also noted and explained in the affidavits of both Jack Leicher, the Director of Workers’ Compensation Regulatory Services, former Director of Self-Insurance and 32-year Workers’ Compensation Board employee, and Paul Altruda, the Assistant Deputy Superintendent and Counsel in the New York State Insurance Department. Director Leicher and Assistant Deputy Superintendent Altruda both testify in their affidavits that the rules governing the Standard Policy do not apply to self-insurers.
Director Leicher explains that the purpose of excess reinsurance policies, as required of self-insurers pursuant to 12 NYCRR 316.2 in the discretion of the Chair, is only to guarantee the payment of any liability arising from workers’ compensation benefits per se and not third-party claims against the employer. Assistant Deputy Superintendent Altruda, in his affidavit, states his concurrence, inter alia, with Director Leicher’s statements that a self-insurer is not required by law to provide unlimited coverage for employer’s liability.
The reasonableness of this interpretation is supported statutorily by 12 NYCRR 315.2 (a), as mentioned above, which states in pertinent part that
“[t]he employer shall execute and file with the chairman an agreement * * *
“to pay to injured employees and to the dependents of deceased employees * * * all compensation as required by the provisions of the Workers’ Compensation Law” (emphasis added).
*590 It is instructive here again that Workers’ Compensation Law § 2 (6) defines the term “compensation” to refer to the money allowance (and funeral expenses in the event of death) payable to an injured employee as a result of an injury which arose out of and in the course of the employment. Since the definition specifically specifies money payable to an injured employee, it could be reasonably construed (and obviously has been so construed by the Workers’ Compensation Board and the State Insurance Department) not to include payments made to the employer by an insurance company for money the employer paid for third-party claims as a result of any such accidents.
It is a well-settled principle of law that a court should defer to the construction given to applicable statutes and its own regulations by the agency or agencies responsible for its sound and practical administration. Such will be sustained unless irrational or unreasonable. (Matter of Howard Johnson Co. v State Tax Commn., 105 AD2d 948 [3d Dept 1984]; Matter of Consolidated Mut. Ins. Co., 60 NY2d 1, 8 [1983].) In light of the above analysis, the conclusion of Director Leicher and Assistant Deputy Superintendent Altruda, and, thus, the position taken by Oneida Ltd. and Republic Western herein, cannot be said to be irrational or unreasonable given a contextual reading of the relevant provisions of the Workers’ Compensation Law, and the attendant rules and regulations of the Workers’ Compensation Board, with an eye to the purposes for which the law was created.
Utica Mutual alleges, nonetheless, that it is standard and required practice for umbrella liability policies issued in New York State to not underwrite workers’ compensation and employer’s liability policies of their insureds. Utica Mutual bases its allegation solely on the June 28, 1988 General Counsel’s opinion from the New York Insurance Department (cited in pertinent part supra, at 581) and October 16, 1987 Circular Letter No. 17 issued by the New York State Insurance Department (cited in pertinent part supra, at 581). In interpreting the General Counsel’s opinion and Circular Letter No. 17, however, Utica Mutual either refuses to or fails to acknowledge the fundamental difference between what is a Standard (workers’ compensation) Policy and what is an excess (reinsurance) policy.[9] Interpreted within the context of the above reading of the Workers’ Compensation Law, it is *591 abundantly clear that both the General Counsel’s opinion and Circular Letter No. 17 speak specifically to the Standard (workers’ compensation) Policy forms, and have no bearing on excess (reinsurance) policies, and either their forms or acceptance.
It is noteworthy that Assistant Deputy Superintendent Altruda of the State Insurance Department testified that there is no Insurance Department requirement that employer’s liability coverage provided under excess reinsurance policy forms be unlimited in order for the insurance form to be used, as opposed to the Standard workers’ compensation Policy form on which the employer’s liability (i.e., coverage B) shall not be limited. Utica Mutual has submitted no affidavit from any officer, past or present, of the State Insurance Department, in support of their interpretation of the proffered documents and has offered no proof that they attempted to obtain any such statement or interpretation.
Similarly, while Utica Mutual alleges that it is standard and required practice for umbrella liability policies issued in New York State to not underwrite workers’ compensation and employer’s liability policies of their insureds, Utica Mutual does not offer, by affidavit or otherwise, any evidence that other insurance companies in New York State interpret the law as Utica Mutual suggests or have declined to underwrite an employer’s liability policy as divorced from a Standard (workers’ compensation) Policy for the reasons suggested by Utica Mutual.
The only affidavits submitted by Utica Mutual in support of its position are those of Utica Mutual Manager Seccurra, Utica Mutual Manager of Underwriting Stedman, and David Wafer, one of Oneida Ltd.’s brokers, upon whom Utica Mutual relied concerning his opinion Republic Western’s efforts to limit its employer liability insurance in New York were not valid and would not uphold legally. All three (notably interested) parties, in their affidavits, offer repeatedly their “belief’ that employer liability insurance could not be limited as Republic Western’s policy purported to do. Utica Mutual has offered no other evidence in support of their position on the status of New York law in this regard.
Given the aforementioned, and having taken a hard look at the language and goals of the Workers’ Compensation Law, *592 along with the attendant rules and regulations promulgated by the administrative agencies charged with interpreting and enforcing the provisions and spirit of such law, in light of the divergence in policy goals underlying the Standard (workers’ compensation) Policy and excess reinsurance policies under 12 NYCRR 316.2 vis-a-vis the characteristic difference between workers’ compensation liability and employer’s third-party liability, the determination is compelled that Utica Mutual is misguided in its analysis of the requirements of policy coverage for self-insuring employers under the Workers’ Compensation Law and incorrect in its conclusion that the Republic Western policy was bound as a matter of law to provide unlimited coverage for that portion of its policy in which Oneida Ltd. purchased employer’s liability coverage (which portion of the policy was properly and legally limited in amount) in addition to purchasing excess workers’ compensation coverage to meet the requirements specified by the chair to qualify as a self-insurer under 12 NYCRR parts 315 and 316.
IV. Construing the Coverage of the Utica Mutual Policy: the Republic Western Policy as Underlying Insurance
Utica Mutual makes two further contentions, specifically concerning the terms and coverage of its policy issued to Oneida Ltd., in opposition to Oneida Ltd.’s and Republic Western’s respective motions for summary judgment and in support of its own motion for summary judgment. First, Oneida Ltd. alleges that given its position that there can be “no limit on Employer’s Liability coverage in New York State”, the terms and coverage of its insurance policy should be read in light of this rule. This argument, given the determination reached herein, is now moot and academic since the argument incorporates Utica Mutual’s incorrect assumption that the Republic Western policy, as a matter of law, could not limit its coverage of employer’s liability.[10]
Second, Utica Mutual alleges that it specifically disclaimed in its policy coverage for all employer’s liability insurance in *593 the Republic Western policy by its statement that “In New York State, Employer’s Liability is not applicable when New York Workers’ Compensation Law applies.” As an initial matter, it is important to note that an insurance policy is not a statute and its terms should generally be construed as they would be understood by the ordinary person or customer. (Johnson Corp. v Indemnity Ins. Co., 7 NY2d 222 [1959].) Because, in most instances, insurance policies are unilaterally drawn by the issuer, such agreements are construed strictly in favor of the insured and against the insurer; in other words, this incorporates the long-established proposition that a contract’s residual doubts or ambiguities are to be resolved against the party who prepared it. (Loblaw, Inc. v Employers’ Liability Assur. Corp., 57 NY2d 872 [1982].)
Accordingly, following this framework for analysis, the only conclusion to be drawn from the language and terms of the Utica Mutual policy is that the policy did not specifically disclaim umbrella coverage for the employer’s liability coverage in the Republic Western policy.
It is clearly stated on the coverage form for the Utica Mutual policy, under coverage A, section I, that Utica Mutual: “will pay those sums, in excess of the limits of liability under the terms of any ‘underlying insurance,’ that the insured becomes legally obligated to pay as damages because of the ‘injury’ or ‘wrongful act,’ to which this insurance applies, or would apply but for the exhaustion of its applicable limits of insurance.”
The Republic Western policy, along with its policy number and a description of its coverage (“Employer’s Liability on Excess Workers’ Compensation Policy” [emphasis added]), is specifically listed on the supplemental schedule of underlying insurance,[11] an attachment to the Utica Mutual policy. The Utica Mutual policy, in addition, states the limits of the Republic Western policy as: “$1,000,000 each accident/$1,000,000 each employee by disease/$l,000,000 policy limit excess of a self-insured retention of 350,000 in New York State. In New York State, Employer’s Liability is not applicable when New York Workers’ Compensation Law applies.” (Emphasis added.) *594 The above-italicized sentence in the “Limits of Insurance” section of the Utica Mutual policy’s schedule of underlying insurance is that which Utica Mutual maintains disclaims coverage for the Republic Western policy.
This argument is without merit: the sentence in no way denotes any intention or meaning that no umbrella coverage was provided with the Republic Western policy as an underlying insurance policy. Further, because the sentence was written along with the policy limits of the Republic Western policy on the list of underlying insurance policies covered by the Utica Mutual umbrella policy, an ordinary person or customer could not be assumed to read such sentence as disclaiming coverage in any manner.
In sum, the broad and suggestive reading forwarded by Utica Mutual, first, does not accurately state the law (cf., Graphic Arts Mut. Ins. Co. v Bakers Mut. Ins. Co., 45 NY2d 551 [1978]), second, does not effectively disclaim coverage in any sense and, at best, simply reveals a potential ambiguity in the contract which, under settled principles, must be resolved against the insurance company which drafted the policy. (Insurance Co. v Dayton Tool & Die Works, 57 NY2d 489 [1982].)
CONCLUSION
Accordingly, and for the reasons set forth herein, plaintiff Oneida Ltd.’s motion for summary judgment is, in all respects, granted, defendant Republic Western’s motion for summary judgment is, in all respects, granted, and Utica Mutual’s motion for summary judgment is denied in its entirety.

. Republic Western stipulates that, in addition to being liable to provide unlimited coverage for the Ketchum brothers’ statutory workers’ compensation benefits, pursuant to its policy, it is responsible for indemnifying plaintiff for any amount up to, but not exceeding, $1,000,000 of employer’s third-party liability incurred by Oneida Ltd. as a result of the Ketchum brothers’ accident.

. In October 1992, the time of the accident, Camden Wire was a wholly owned subsidiary of Oneida Ltd. In February 1997, Oneida Ltd. sold all of its shares of Camden Wire to a third party. As part of that transaction, Oneida Ltd. agreed that it would indemnify Camden Wire and its new principals for all liabilities in connection with the two pending personal injury actions. In consideration, Camden Wire assigned Oneida Ltd. all of Camden Wire’s rights to any insurance proceeds received related to the two personal injury actions.

. It is undisputed here that the $400,000 self-insured retention has already been satisfied by Camden Wire’s payment of statutory workers’ compensation benefits to the Ketchum brothers.

. It is significant to note that at paragraph 9 of Utica Mutual’s attorney’s affidavit, in restating the text of the General Counsel’s opinion, the word “form” (herein set forth in italics) was incorrectly omitted. Clarification herein that the “policy form”, not “policy”, is the correct phrase in the opinion is necessary in that it indicates the context of the opinion as commenting on the relative acceptability of insurance forms rather than the acceptance and approval of excess workers’ compensation (reinsurance) policies which is not within the purview of the Insurance Department.

. Utica Mutual has also submitted an affidavit of Daniel Stedman, Utica Mutual’s Manager of Underwriting. Manager Stedman concurs with Manager Seceurra’s testimony and alleges, among other things, that he has never seen a limit imposed upon underlying employer’s liability insurance coverage in New York State since such is not permitted. He does not define or clarify what he means by the word “underlying”.

. Part one coverage in the standard workers’ compensation policy, for statutory compensation liability, is also known as coverage A. Part two coverage in the standard workers’ compensation policy, for employer’s liability, is also known as coverage B.

. The Chair of the Workers’ Compensation Board is charged with administering all matters relating to self-insurance under the statute. (See, Workers’ Compensation Law § 50 [5] [a].)

. This distinction is critical in that the Workers’ Compensation Law is remedial in character (Matter of Holcomb v Daily News, 45 NY2d 602 [1978]), and is intended to provide an injured employee with compensation and medical expenses regardless of fault. With an excess insurance policy that at most may indirectly benefit the injured employee, but never guarantees him direct payment of benefits or standing to enforce the coverage of the policy, the goals of reimbursing for third-party employer’s liability stands in contrast with the goals of the Workers’ Compensation Law. Workers’ compensation, as distinguished from tort liability, which is essentially based on fault, is designed to shift risk of loss of earning capacity caused by industrial ac *589 cidents from worker to industry and ultimately to consumer. (See, Matter of Wolfe v Sibley, Lindsay & Curr Co., 36 NY2d 505 [1975].)

. Both the General Counsel’s opinion and Circular Letter No 17 refer in title and in text to coverage A and coverage B when speaking to requirements of unlimited coverage in insurance policies. As mentioned supra, *591 coverage A and coverage B are terms used to refer to the two parts of the Standard (workers’ compensation) Policy and the Standard Policy form.

. Also rendered moot and academic is Utica Mutual’s contention that Republic Western created an ambiguity concerning the limits of coverage in its policy when it described such as “statutory” on the certificate of insurance filed with the Workers’ Compensation Board. Given that the Workers’ Compensation Board, in determining a potential self-insured’s application, only is concerned, pursuant to 12 NYCRR parts 315 and 316, with the applicant’s ability to cover compensation benefits liability, “statutory” correctly denotes the required unlimited coverage for compensation benefits liability and reference to limits of a separate and distinct employer’s liability portion *593 of the policy would have been superfluous and unnecessary in light of the purpose of the filing.

. The Utica Mutual policy’s terms of coverage define underlying insurance as “the liability insurance coverage provided under the policies shown in the Declarations”, and it is stated on the declarations page of the policy that the list of underlying insurance on the declarations page is supplemented by the “Supplemental Schedule of Underlying Insurance”.